## H. C. SCOTT ET AL. V. FARMERS AND MERCHANTS NATIONAL BANK ET AL.

### No. 1137. Decided June 15, 1903.

**1.—Corporation—Directors—Personal Interest—Mortgage.**

Directors can not bind the corporation in a matter in which they are all personally and adversely interested. Where corporate bonds, issued but never sold, secured by mortgage, were, by resolution of the directors, held by the secretary of the corporation to secure the directors, who had all personally indorsed obligations of the company, a sale under the mortgage passed no title as against purchasers under sales upon subsequently acquired judgment or mortgage liens. (Pp. 45, 46.)

**2.—Fraudulent Conveyance—Directors of Corporation.**

A conveyance by an insolvent corporation upon a consideration partly for the benefit of its directors is fraudulent and invalid as against existing claims on the company. Where the directors of an insolvent street car company sold its property to another company, part of the consideration being an agreement by the latter to extend the line to a suburb where certain directors owned property, the title held under their vendee was invalid as against that of a subsequent purchaser at execution sale under a judgment recovered after such conveyance by the corporation, but upon a claim for personal injuries existing before the conveyance. (P. 46.)

**3.—Receiver's Sale—Claims Concluded.**

When property in the hands of a receiver has been sold by a decree of the court without reservation as to the rights of any party to the suit, or without prejudice to a particular claim of one party only, the sale frees the title of all claims by any party to the proceeding which are not excepted or reserved by the terms of the decree. (Pp. 46, 47.)

**4.—Corporation—Contract—Promoter.**

The president of a corporation claiming title to property conveyed to him, under a contract by the grantors to give same to the company as a bonus for constructing its line of street railway to their property, as belonging to him for his services as a promoter, must show a legal contract with the company therefor, by corporate authority, in order to establish his claim as one to the specific property, rather than as a general indebtedness against the company. (Pp. 53, 54.)

**5.—Same—Trustees' Sale—Consideration.**

H., the president of the E. company, bid in at a sale under a trust deed given by the D. Company, its former owner, a line of street railway which the D. company had already conveyed to the E. company; the consideration claimed to have been given by H. in such purchase at trustee's sale was his title to certain lots which suburban property owners had contracted to give the E. company as a bonus for constructing the line to their property, and had conveyed to H. in pursuance of such undertaking, but which H. claimed personally for his services as promoter of the corporation. Held, that, in

the absence of a showing of a contract legally made for the E. corporation, through an agent by resolution of its directors or authority of the stockholders, recognizing the title of H. to the lots, no consideration from H. personally was shown to have passed on the trustee's sale, and the title on his purchase could not prevail over that of the E. company through its previous conveyance from the D. company. (Pp. 48-54.)

**6.—Trustee's Sale—Clearing Title—Sale Merely Formal.**

Where a sale under a trust deed was had as a merely formal proceeding to clear the title of the assignee of the equity of redemption, the mortgagee, whose debt was otherwise secured receiving no part of the nominal purchase price, and the president of the corporation owning the equity of redemption bidding it in at the sale under circumstances making him a trustee for the corporation, no title could be said to pass to him by the sale. (Pp. 54, 55.)

**7.—Estoppel—Contract—Performance.**

One having a contract to acquire property by performance of certain conditions, who permitted or procured a corporation organized by himself to perform the conditions, held estopped to·deny that it was properly substituted to his place under his original contract. (Pp. 54, 55.)

**8.—Findings of Fact—When Disregarded.**

The undisputed facts being sufficient to enable the appellate court to properly dispose of the case, it was held proper to disregard findings of the jury on special issues as follows: (1) That consideration in money and services moved from the president of a corporation to whom a conveyance was made—that not being the controlling issue, since the consideration appeared to have been advanced by him to the corporation, and to constitute a claim against it, and not against the property. (2) That the intention of the makers of a deed was to vest title in the grantee personally—such intention being immaterial in case of a constructive trust. (3) That a certain person was the "owner" of certain lots—he holding the legal title, and the question of the equitable title being not one of fact merely, but of mixed law and fact, on which the jury were given no directions as to the law. (4) That certain land was accepted in payment of the purchaser's bid at a trustee's sale—where that issue was immaterial. (5) That a contract made, by its terms with a street railway company, was made with him "as an individual"—it being immaterial that he may have intended it for his own benefit. (6) That money was paid as a consideration for land by the president of a corporation—the issue being whether it was advanced for the corporation or paid for himself. (7) That money was paid by a bidder at a sale—where no money was paid on his bid of $7500 except $25 as fees of the trustee, paid with corporate funds and not material to the issues. (Pp. 55-57.)

**9.—Corporation—Right to Hold Lands.**

No one but the State can question the ownership of land by a corporation because not entitled by its charter to take and hold real estate. (P. 57.)

**10.—Same—Immaterial Issue.**

Whether a corporation could hold land claimed to have belonged to it as against the claim of its president individually, was immaterial in a case where its conveyance by him as consideration for the property in controversy could not have entitled him to that specific property but only to a money claim against the corporation. (Pp. 57, 58.)

**11.—Constitutional Law—Street Railways—Parallel and Competing Lines.**

Article 10, sec. 5, of the Constitution, prohibiting the consolidation of parallel and competing lines of railway, applies to railroads proper, not to lines of street railway. (P. 58.)

**12.—Vendor's Lien—Collateral Contract.**

Though it has been held that a note given to a third party for a part of the purchase money of land will carry a vendor's lien, such lien will not be implied as security for a collateral undertaking on a sale, such as an agreement to build and operate a line of street railway for a term of years for the benefit of property owners. (Howe v. Harding, 76 Texas, 17, distinguished.) (Pp. 58, 59.)

**13.—Fraudulent Conveyance—Damages.**

Questioned whether, on a contract by the directors of an insolvent corporation conveying its property partly in consideration of a promise for the personal benefit of the directors they can recover damages for its breach. (P. 59.)

Error to the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

Suits brought by the Farmers and Merchants National Bank, of Waco, against Scott and the Citizens Railway Company, and by Parker against the Farmers and Merchants National Bank were consolidated and judgment was rendered for the bank with a lien on the property adjudged in favor of Parker. All parties appealed, and on affirmance each obtained writ of error.

*Clark & Bollinger,* for H. C. Scott and the Citizens Railway Company.—The plaintiff, the Farmers and Merchants National Bank, deriving title, as it did, solely through a levy and sale of the property in controversy as the individual property of W. J. Hobson, when the evidence showed indubitably and without contradiction that Hobson was acting for his company in bidding off the property at trustee's sale, which sale was made solely for the purpose of freeing the title from the incumbrance of the deed of trust, and no money having been paid by Hobson at such sale, and the consideration for the original deed from the Waco Dummy Street Railway Company to the Waco Electric Railway and Light Company having been paid by property of the latter, the plaintiff bank took no title to the property by reason of said sheriff's sale, and its title failed. In addition to this, W. J. Hobson being at the time president and a director of the Waco Electric Railway and Light Company, he occupied the position of trustee for his said company and could not take title individually to said property to the prejudice of his cestui que trust. The apparent legal title in Hobson was a naked trust simply. To this contention these propositions are submitted, all of which are fully borne out by the authorities cited, to wit:

1. W. J. Hobson, being president and a director of the Waco Electric Railway and Light Company, was in law a trustee for his company, and could not purchase and hold said company's property by title derived from the Rogers trustee sale. 1 Mora. on Corp., sec. 519.

2. Director bound to act as representative of corporation, and can not acquire property for himself which it is his duty to acquire for company and necessary for its purposes. He is an ordinary trustee. Blake v. Railway Co., 56 N. Y., 485.

3. Officer purchasing corporate property at execution sale, his purchase regarded as for corporation, and his title can not be regarded as hostile to corporation. McAllen v. Woodcock, 60 Mo., 174.

4. President of corporation who buys land and has it conveyed to himself, is a trustee for company. Trenton Bkg. Co. v. McKelway, 8 N. J. Eq. (4 Halstead), 84.

5. If director deals with corporate property and obtains an interest therein for his own benefit, it will be set aside at instance of the corporation or those claiming under it. Hope v. Valley City Salt Co., 25 W. Va., 789. See also Averall v. Barber, 53 Hun, 636, which holds that equity will force director to account.

6. Trustee never permitted to purchase on his own account, no mat-

97 Supreme—3.

ter who sells. Carson v. Marshall, 37 N. J. Eq., 215; Raleigh v. Fitzpatrick, 43 N. J. Eq., 510.

7. Officer of corporation a trustee and not permitted to buy corporate property on his own account, even at execution sales. Water Co. v. Pattee, 86 Cal., 623; Coal Co. v. Coal & Iron Co., 16 Md., 456; Maryland Fire Insurance Co. v. Dalrymple, 25 Md., 266; Coal Co. v. Parish, 42 Md., 605; Sweeny v. Grape Sugar Co., 30 W. Va., 443; Cab Co. v. Yerkes, 141 Ill., 320; Borders v. Murphy, 125 Ill., 577.

8. Directors guilty of a gross breach of trust by securing personal advantage. Drury v. Cross, 7 Wall., 299. And they can not contract so as to divest corporation of its property. Jackson v. Ludeling, 21 Wall., 616; Cook v. Sherman, 20 Fed. Rep., 167. A president who buys corporation land and has it conveyed to himself, is a trustee. Trenton Bank v. McKelway, 8, N. J. Eq., 84. And possession of corporate land by a director, is the possession of the corporation, even though the director had previously bought the land at execution sale. Hoffman v. Reichert, 147 Ill., 274. Such purchase must be regarded as a purchase by the corporation. McAllen v. Woodcock, 60 Mo., 174. See also to same general effect: Hun v. Cary, 82 N. Y., 65; Railway Co. v. Bowler, 9 Bush (Ky.), 468; Port v. Russell, 36 Ind., 60; Wilbur v. Lynde, 49 Cal., 290; Smith v. Association, 78 Cal., 289; Bank v. Lumber Co., 91 Ga., 624. These principles are recognized and enforced in Texas. Seale v. Baker, 70 Texas, 291; Halsell v. Coal Co., 81 Texas, 64, 413; San Antonio Railway Co. v. Adams, 87 Texas, 131.

It is submitted that in the face of the law and the facts the claim of the bank is not only contrary to every principle of law and equity, but is contrary to good morals and deserves the prompt condemnation of the courts. The court below should have awarded judgment to these appellants, upon the uncontroverted facts, and the judgment as rendered, in favor of the bank, is a travesty upon equity. It violates the foundation principle of agency, and is a hideous mockery of what has ever been regarded as one of the keystones of civilized jurisprudence.

The officer of a corporation is not entitled in law to any compensation for services rendered unless the compensation has been fixed and agreed upon by the proper corporate authorities anterior to the performance of service. W. J. Hobson was not entitled to charge the Waco Electric Railway and Light Company for his services merely upon his own motion without any corporate action, and could not claim any of the property of the Waco Electric Railway and Light Company as his own individual property, no matter what money he may have advanced to said corporation, nor what services he may have rendered. The jury, therefore, could not find in answer to special issue number 1 submitted to them by the Farmers and Merchants National Bank that Hobson paid for blocks 1, 39, 47 and 57 in "money and services" in view of the testimony; and such finding is too indefinite to support the action of the court in rendering a judgment for the Farmers and Merchants National Bank awarding to said bank the title to the property in con-

troversy. Kilpatrick v. Bridge Co., 49 Pa. St., 118; Holder v. Railway Co., 71 Ill., 106; Loan Assn. v. Stonemetz, 29 Pa. St., 534; Railway Co. v. Ketchum, 27 Conn., 170; Dunston v. Gas Co., 3 B. & A., 125; Butts v. Wood, 37 N. Y., 317.

The sale under the Rogers deed of trust, made on June 7, 1892, and solely for the purpose of clearing the title of the Dummy Street Railway Company from all incumbrances in accordance with the covenants of the deed from the Dummy Street Railway Company to the Waco Electric and Light Company, and no consideration passing at said sale, the purchase of Hobson at said sale was necessarily made by him as trustee for his company, the Waco Electric Railway and Light Company, and the title conveyed to him by the trustee was a bare legal title and he held the property simply as trustee for his company, and not with any beneficial title or ownership whatsoever in himself as an individual. The sheriff's sale, therefore, at the instance of the Farmers and Merchants National Bank, at which it purchased the property as the indivdual property of Hobson, passed no title to said bank by reason of said sale and sheriff's deed, either real or beneficial. Freeman on Ex., sec. 173; Hale v. Hollon, 36 S. W. Rep., 288; Hale v. Hollon, 35 S. W. Rep., 843; Smith v. McCann, 24 How., 405; Byrnes v. Morris, 53 Texas, 218; Tarpley v. Poage, 2 Texas, 151; Smith v. Strahan, 16 Texas, 320.

The issues submitted by the Farmers and Merchants National Bank, numbers 2 and 2½, could not have been answered by the jury in the absence of other and further instructions, and the issue submitted in number 2 was not justified by evidence in the case, because there was no evidence as to the intention of the makers of the deed conveying lots 1, 39, 47 and 57 by the University Heights Investment Company as to what was their intention in making such deeds except as expressed upon the face of the contract and the deed, and these showed beyond question that it was their intention to vest title to said four blocks for the benefit of the Waco Electric Railway and Light Company. The finding of the jury, therefore, as to said issues was directly contrary to the evidence and could not be made the basis of the judgment, and should have been set aside by the court. Rev. Stats., art. 1331; Leary v. Building Assn., 49 S. W. Rep., 632; Devine v. Mortgage Co., 48 S. W. Rep., 585; Insurance Co. v. Moore, 46 S. W. Rep., 1131; Armstrong v. Elliott, 48 S. W. Rep., 605.

The Waco Dummy Street Railway Company and Waco Electric Railway and Light Company and the Citizens Railway Company, being all street railways, and each of them incorporated under the general incorporation laws of the State of Texas, and not under the railway incorporation act, the provisions of the Constitution as to parallel and competing lines do not apply to such street railways, and the issues submitted by the Farmers and Merchants National Bank, numbers 22 and 23, were wholly irrelevant and immaterial. Boothe on Street Railways, sec. 429; Appeal of Montgomery, 136 Pa. St., 96; Farmers and M. Bank v. Scott, 19 Texas Civ. App., 22.

The Farmers and Merchants National Bank, having been a party to the receivership suit of Early v. Waco Electric Railway and Light Company et al., long anterior to its purchase under execution sale of the property of the Waco Dummy Street Railway Company, said bank was chargeable with notice of every judicial transaction had and done in said cause, and especially was chargeable with notice that W. J. Hobson was not claiming the property of the Waco Dummy Street Railway Company as his individual property, but that the same was in the possession of the court and of the receiver, and operated and administered by the receiver as assets of the Waco Electric Railway and Light Company. The said bank, therefore, could not set up plea of innocent purchaser without notice, and the bona fides of its purchase at execution sale, especially in view of the fact that it credited the amount of its bid on its judgment. Benner v. Grigsby, 84 Texas, 332; Steffian v. Bank, 69 Texas, 513; Watrous v. Rodgers, 16 Texas, 411; Perkins v. Wood, 63 Texas, 398; Desmuke v. Houston, 89 Texas, 10.

The pretended claim of J. E. Parker, A. A. Robinson, L. B. Daughtry, J. W. Johnson, John Sleeper and J. A. Clifton, plaintiffs in 588, seeking to establish a lien, was barred by the statute of limitation at the time it was first set up by trial amendment in this cause, and the court erred in overruling these appellants' demurrer to said pleading on that ground. Rev. Stats., arts. 3356, 3358.

*John W. Davis,* for Farmers and Merchants National Bank of Waco.— Hobson contracted with the Waco Dummy Street Railway Company on March 8, 1892, to purchase the property in controversy in this cause, said contract being signed by each stockholder of the Dummy and Hobson in person, said contract providing that said Dummy should free said property from all incumbrance. On the 5th of November, 1891, the Dummy company executed a trust deed to Robt. H. Rogers, trustee, to secure upwards of $8000 due by it to the Citizens National Bank. In pursuance of said contract to free said property from incumbrance, the Dummy had Rogers, trustee, to sell said property under said trust deed, which was done on the 7th of June, 1892, and Hobson became the purchaser at said trust sale, to whom Rogers, trustee, executed and delivered a deed which was recorded at once; under the contract between Hobson and the Dummy, Hobson was to pay four blocks of land, valued at $7500 for said property so sold to him; said blocks of land were coming to Hobson by contract with parties owning them, but had not at date of Rogers' sale been conveyed to him, but were conveyed on August 1, 1892, and immediately recorded, and on 4th of August, 1892, Hobson conveyed said blocks of land to Parker, president of the Dummy company, and which were used by Parker in payment of the debt secured by said Rogers' trust deed. Said blocks of land came to Hobson as a promoter for running a street car line through the lands in which they were located. On April 4, 1892, after said contract had been entered into between the Dummy company and Hobson, the Dummy company,

without Hobson's knowledge or consent, recorded a deed without consideration, conveying said property to the Waco Electric Railway and Light Company through which appellants claim title, and appellee claims title through Hobson. The case was submitted to the jury on special issues, and the jury found that the blocks of ground which paid for the property in controversy belonged to Hobson, and the court adjudged the property in controversy to belong to the Farmers and Merchants National Bank. It is submitted that the judgment of the court in adjudging title to said bank is right and in accordance with law. Farmers and M. Bank v. Scott, 19 Texas Civ. App., 22.

In the case just cited, which is this case on a former appeal to this court, the court held under a state of facts not as strong in favor of the bank as the facts are in this appeal, that as to the ownership of the property by Hobson or the Waco Electric Railway and Light Company there was a conflict of evidence and the matter should be submitted to the jury. We take it the cause cited is conclusive of this case, and the jury having found in favor of the bank this court will necessarily affirm the judgment of the court based upon the verdict of the jury. Where testimony is conflicting, even though the evidence be slight in favor of the verdict, the appellate court will not disturb it. Brin v. McGregor, 64 S. W. Rep., 78; Galveston H. & S. A. Ry. Co. v. Garrett, 73 Texas, 262; Galveston Wharf Co. v. Gulf C. & S. F. Ry. Co., 72 Texas, 459. Verdict of jury will not be disturbed by appellate courts unless there is no evidence to support it. Texas & N. O. Ry. Co. v. Ludtke, 3 Texas Civ. App., 308.

The evidence shows that the Waco Dummy Street Railway Company conveyed its property and effects to Robert H. Rogers, trustee, on November 5, 1891, to secure the Citizens National Bank in a debt; that Rogers sold said property under his trust deed in June, 1892, to Hobson. Whilst the title was in this condition plaintiff levied an execution on same against Hobson, and bought it in, and took a sheriff's deed to the same. Defendants claimed under a deed from the Waco Dummy Street Railway Company, dated in April, 1892, and also that Hobson held the property under his purchase from Rogers, trustee, in trust for those under whom they claim, on the basis of resulting trust in Hobson, by reason of his using the property of parties through whom they claim, to pay for it, which property was conveyed in August, 1892, about two months after the deed from Rogers to Hobson. It is, therefore, submitted, first that the title of plaintiff on its face is paramount, and even if the evidence fails to support the verdict of the jury to the title of the property being in Hobson, defendants can not sustain the resulting trust because the purchase and payment were not one transaction. To constitute a resulting trust the payment must be made at time of purchase, and not subsequent. Parker v. Coop, 60 Texas, 118; Gardner v. Rundell, 70 Texas, 456. Resulting trusts are not created by agreement. They arise alone from the acts of the parties. Boehl v. Wadgymar, 54 Texas, 589. The purchaser at execution sale, if the

legal title was in the execution debtor, is not affected by any secret trust of which he had no notice. Love v. Berry, 22 Texas, 372; Blankenship v. Douglass, 26 Texas, 227.

An individual can make contracts with parties in a city to pay him certain money or property for procuring a charter to a street railway and running it through their lands in said city, and if the said party procures a charter at his own expense and builds the railway at his own expense, and at the time said bonus contracts are made the railway corporation has not been organized by placing the stock, the promoter ·can use the name of the railway in making said bonus contracts for himself and own the bonuses individually, provided such was the understanding and agreement at the time between the parties contracted with and such individual. Especially is this true when such is acquiesced in and recognized by the stockholders and directors of such railway corporation. 1 Thomp. on Corp., secs. 480-490, inclusive; Fort Worth Pub. Co. v. Hitson, 80 Texas, 228; 4 Thomp. on Corp., sec. 4474 et seq.; 5 Thomp. on Corp., sec. 6531. Where a director of a corporation performed services as its manager, not pertaining to his duties as director, he is entitled to recover the reasonable value of such services. Bassett v. Fairchild, 53 Cent. Law Jour., 111; Fitzgerald v. Fitzgerald, 137 U. S., 98; Pew v. Bank, 130 Mass., 391, 395; Ten Eyck v. Railroad, 74 Mich., 226.

It is true that the sale under the Rogers trust deed on June 7, 1892, as found by the jury, was for the purpose of clearing incumbrances, but it was made for the purpose of clearing incumbrances contracted to be done with Hobson on March 8, 1892, when the Waco Dummy Street Railway Company made its proposition to sell to Hobson (not to the Waco Electric Railway and Light Company) and Hobson accepted the proposition. The deed to the Electric Railway and Light Company not being authorized or accepted, the contract with Hobson not having been abrogated remained in full force and effect, so that when the property was sold by Rogers, trustee, Hobson, the party to the contract with the Waco Dummy Street Railway Company, purchased it and paid for it, thus perfecting his title under his contract of March 8, 1892. Bank v. Scott, 45 S. W. Rep., 26, 19 Texas Civ. App., 22.

Hobson procured a charter for the Waco Electric Railway and Light Company, and before and after it was procured, and before it was organized, took bonuses by contracts with himself to build the road in certain directions, and in some instances used the corporate name in signing contracts, with the express understanding that the title to the bonuses was vested in him and deed should be made to him, and Hobson afterwards received all the bonuses for building the road, both before and after the corporation was organized, with the consent and acquiescence of the stockholders and directors of the corporation, Hobson having built the road with his own funds. In a contest as to one of the bonuses, the question is submitted to a jury, to whom it belongs, and the answer is, "To Hobson." Such verdict must stand. Where

testimony is conflicting verdict will stand. Galveston H. & S. A. Ry. Co. v. Garrett, 73 Texas, 262; Galveston Wharf Co. v. Railway Co., 72 Texas, 459; Brin v. McGregor, 64 S. W. Rep., 78; Texas & N. O. Ry. Co. v. Ludtke, 3 Texas Civ. App., 308. On acquiescence. Fort Worth v. Hitson, 80 Texas, 228; 4 Thomp. on Corp., sec. 4474 et seq.; 5 Thomp. on Corp., sec. 6531.

Under the Constitution and laws of Texas no railroad or other corporation, or the lessees, purchasers or managers of any railroad corporation, shall consolidate the stock, property or franchises of such corporation with, or lease or purchase the works or franchises of, or in any way control any railroad corporation owning or having under its control a parallel or competing line, and this applies as much to railways incorporated under the general incorporation act as under the railroad act, and to street railways as well as others. Const. of Texas, art. 10, sec. 5; Rev. Stats., arts. 4529, 4530; Gulf C. & S. F. Ry. Co. v. State, 72 Texas, 404; C. & M. Ry. Co. v. Morris, 68 Texas, 59. A railway company chartered under general laws can not purchase the railway of another company, nor can such power be obtained through an amended charter in the absence of legislative permission. Gulf C. & S. F. Ry. Co. v. Morris, 67 Texas, 692; Railway Co. v. Morris, 68 Texas, 50; Russell v. Railway Co., 68 Texas, 646; East Line & R. R. Ry. Co. v. Rushing, 69 Texas, 306; East Line & R. R. Ry. Co. v. State, 75 Texas, 434.

If the court should hold that the contract made with Hobson by the Waco Dummy Street Railway and Light Company, and that the deed of the 4th of April, 1892, was made and accepted under said contract, and that the purchase by Hobson at the Rogers trustee sale on the 7th of June was for the Waco Electric Railway and Light Company, and that the blocks paid by Hobson for said property were the property of the Waco Electric Railway and Light Company, notwithstanding the verdict of the jury, then we say that on March 8, 1892, and April 4, 1892, and long prior thereto, the Waco Dummy Street Railway Company was insolvent, and did not have means to pay its debts, at which time a suit was pending in the District Court of McLennan County against it, by one J. H. Graves, which was tried on the 17th of March, 1893, and judgment rendered in said cause in favor of Graves for $2000, on which judgment an execution was issued on November 3, 1893, and on which an alias execution was issued on October 5, 1895, and levied on the property in controversy in this cause as the property of the Waco Dummy Street Railway Company, sale by sheriff and purchase by the Farmers and Merchants National Bank, with deed from the sheriff to said bank. When the sale was made by the Dummy Railway Company in 1892, it is submitted that under the recitals in said contract and conveyance and the evidence in this cause, said conveyance was made with intent to hinder, delay and defraud the creditors of the Waco Dummy Street Railway Company, which intent was known to the Waco Electric Railway and Light Company and H. C. Scott and

the Citizens Railway Company, and which fraud was participated in by each of said parties, and that consequently said conveyance by the Dummy Street Railway Company is void as to the Farmers and Merchants National Bank, holding title under the Graves judgment, and that said bank took a good title by its purchase under said Graves judgment. 5 Thomp. on Corp., sec. 6526 et seq.; Bump on Fraud. Conv., secs. 179-200. Actual knowledge of fraud by grantor not necessary; knowledge of facts sufficient to excite suspicion enough. Bump on Fraud. Conv., sec. 184. Directors of corporations bear the relation of trustees to the corporation, and are disqualified from acting officially upon matters of immediate personal or pecuniary interest to themselves. Austin City Ry. Co. v. Swisher, 1 W. & W. C. C., sec. 76; Butts v. Wood, 37 N. Y., 317; Lowry Banking Co. v. Empire Lumber Co., 91 Ga., 624; Farmers Loan and Trust Co. v. San Diego Street Car Co., 45 Fed. Rep., 518; Howe v. Sanford Fork and Tool Co., 44 Fed. Rep., 231; Consolidated Tank Line Co. v. K. C. V. Co., 45 Fed. Rep., 7.

It is submitted (1) that no one legally held said $50,000 bonds; (2) if they were ever held by any one it was to secure the same debt the Rogers trust deed secured, and the purchase money derived from the Rogers trust deed having paid said debt for which said directors claimed they held the bonds as collateral, it extinguished the collateral agreement, and the purchaser at the Rogers trustee sale took title as against Parker et al., who claimed to hold said bonds as collateral to secure them as indorsers on the debt due said bank.

The officers of a corporation can not dispose of its assets without authority, and especially is it true that an insolvent corporation and nongoing concern can not sell all its assets to its directors for their own personal benefit. To dispose of corporate property, there must be authority given. Fitzhugh v. Land Co., 81 Texas, 306; Adams v. Dignowity, 8 Texas Civ. App., 201. When corporations cease to do business, with no intent to resume, their power to contract is gone. Hardware Co. v. Manufacturing Co., 86 Texas, 143; Rev. Stats., art. 682; Railway Co. v. Railway Co., 2 Texas Civ. App., 650; Bank v. Investment Co., 74 Texas, 421; Canning Co. v. Fraser, 81 Texas, 407; L. T. Hardware Co. v. P. S. Co., 86 Texas, 143; Wright v. Euless, 12 Texas Civ. App., 136; Bank v. Light Co., 36 S. W. Rep., 131; Lang v. Dougherty, 74 Texas, 226. All grantors expressed in deed must sign. Tewksbury v. O'Connel, 21 Cal., 60; Batchelor v. Brereton, 112 U. S., 396. On misjoinder, 15 Enc. of Pl. and Prac., 527.

The plaintiffs Parker et al. being, as the evidence shows, directors of a nongoing, insolvent corporation, at the time the Graves cause of action arose against said corporation, on which suit was brought and judgment rendered, and so continuing, could not, after said cause of action arose, so deal with the property or other assets of the corporation as to create a preference of claims in the hands of such directors above other creditors, among whom was the plaintiff in the Graves suit. Such

directors became, from the instant the corporation became a nongoing concern, trustees to protect the interests of the creditors, and are liable personally for the debts of the corporation in a suit by any such creditor or creditors, to the extent of the value of any assets of the corporation so appropriated by them in preferring their own claims or such as they were security for. Rev. Stats., art. 682; Lyon-Thomas Hardware Co. v. Perry Stove Co., 86 Texas, 143; Wright v. Euless, 12 Texas Civ. App., 136; Bank v. Light Co., 36 S. W. Rep., 131; Lang v. Dougherty, 74 Texas, 226; Railway Co. v. Railway Co., 2 Texas Civ. App., 650; Bank v. Investment Co., 74 Texas, 421; Canning Co. v. Fraser, 81 Texas, 407; 3 Thomp. on Corp., secs. 4010, 4012, 4014, 4016, 4021, 4042-4044, 4150, 4151, et seq.; 5 Thomp. on Corp., secs. 6503-6505, 6026, et seq.; 7 Thomp. on Corp., secs. 8473, 8496, 8497.

*Eugene Williams* and *L. W. Campbell,* for J. E. Parker and others.— The court appointing a receiver of the property had no power to annul the contract obligation of Hobson and the electric road by ordering the cars to be discontinued, as contended by appellants in paragraph 1 of their fifth proposition under their fourth assignment of error, but so long as the receiver or any purchaser under Hobson or the electric road held the property they were bound to pay the purchase money due thereon by carrying out the contract to operate the road or pay the damages resulting upon their failure to do so.

This court will not sustain the contention of counsel for Scott and the Citizens Railway Company to the effect that the acts of the plaintiffs, in securing the right to have the road operated to their benefit, was either illegal, fraudulent or without authority, because defendants are holding title, if any they have, to the property by virtue of the same instrument which gave plaintiffs their rights, and so long as they hold under said instrument and under plaintiffs they can not commit the fraudulent act of refusing to operate the road and retain it and be exempt from the damages resulting from a breach of the contract. Hunt v. Turner, 9 Texas, 385; Mills v. Alexander, 21 Texas, 154; Ledyard v. Brown, 27 Texas, 393; Williams v. Wilson, 76 Texas, 72; Galveston & W. Ry. Co. v. Galveston, 37 S. W. Rep., 27; Lottman Bros. v. Houston Waterworks Co., 38 S. W. Rep., 357.

This court will not sustain the contention of counsel for Scott and the Citizens Railway Company to the effect that the act of the plaintiffs, in securing the right to have the road operated to their benefit, was either illegal, fraudulent or without authority, because neither Scott nor the Citizens Railway Company were either creditors or stockholders of the Dummy company, and so long as neither of these complain, the acts of the plaintiffs are valid against the balance of mankind. 3 Thomp. on Corp., sec. 4061, and cases cited in note 3; also secs. 4062-4070; Twin-Lick Oil Co. v. Marbury, 91 U. S., 587; Pneumatic Gas Co. v. Berry, 113 U. S., 322; Frank v. Berwind, 47 S. W. Rep., 681.

We object to any consideration of the assignment of error which, with its subdivisions, complains of the judgment in favor of Parker and his associates on the ground that the evidence is insufficient to support the verdict and judgment for the various reasons set out in said assignment, and we object because the case was tried before a jury and said judgment is based on their verdict and the bank filed no motion for new trial in the court below, and this court will not review said judgment on the facts in the absence of said motion. That no appellate court will review the evidence adduced in a case tried before a jury in the absence of a motion for new trial has been the settled law of Texas since the earliest times. Allen v. Stephanes, 18 Texas, 658; Harrell v. Mexico Cattle Co., 73 Texas, 612; International & G. N. Ry. Co. v. Ryan, 82 Texas, 571; Galbraith v. Townsend, 1 Texas Civ. App., 447; Putnam v. Capps, 6 Texas Civ. App., 610; Texas & N. O. Ry. Co. v. Wood, 24 S. W. Rep., 569; Atchison T. & S. F. Ry. Co. v. Worley, 25 S. W. Rep., 478.

The court erred in vesting the title of the property in controversy in the Farmers and Merchants National Bank and in giving it judgment for rents and damages, because the same should have vested in these plaintiffs, Parker and others, under the foreclosure of the $50,000 mortgage bonds and deed of trust and judgment should have been rendered for them for the property and for said rents and damages. A directors' and stockholders' meeting may be held together, and directors may act by joint consultation without a formal meeting, if all present are consenting. 3 Thomp. on Corp., sec. 3914; 5 Thomp. on Corp., sec. 6184; Despatch v. Bellamy, 37 Am. Dec., 203. The objection not having been assigned as error or made in the court below, is waived and can not be raised here for the first time. See numerous cases; 1 Buckler, p. 182, sec. 68; Hess v. Dean, 66 Texas, 665. A national bank may, like any other corporation, be appointed trustee, agent or attorney in fact. Killingsworth v. Portland, 17 Am. St. Rep., 737. The bank is not a trustee but an agent with power of sale, no title being vested by our law in a grantee in a mortgage or trust deed. Willis v. Moore, 59 Texas, 635. The bank could act as agent to sell, but if not, the effect on the trust deed could have been no greater than a refusal to act, thereby empowering the bondholders to appoint a substitute agent or trustee to sell. Hess v. Dean, 66 Texas, 666.

The pledging of the bonds by the directors, Parker and others to secure themselves for advances made and to be made in building the road and paying the Dummy's debts was a valid proceeding, and if not, appellees show no right under the record to complain. Directors can advance money for the use of their corporation and secure themselves, if the transaction is in good faith. College Belt Line v. Ide, 15 Texas Civ. App., 273; 3 Thomp. on Corp., secs. 4067, 4068, 4069. As long as the corporation is conducting its business, although its liabilities exceed its. assets, the directors may advance money and secure themselves, the corporation being considered solvent by reason of its being

a going concern.   College Belt Line v. Ide, 15 Texas Civ. App., 273. Certifying the bonds by the Citizens National Bank and receiving them and the deed of trust by the directors and thereafter recording the trust deed and delivering the bonds to John Sleeper, who deposited them with the bank, trustee, for the use of appellants, were acts constituting complete and valid delivery.   Newton v. Emerson, 66 Texas, 146.   Graves could not complain of the action of the directors in pledging the bonds for their protection unless he had shown a specific intent on the part of the directors to defraud him, he being a subsequent creditor.   Cole v. Terrell, 71 Texas, 556; Dosche v. Nette, 81 Texas, 269.   Appellees having acquired title after the bonds were pledged can not complain. Dittman v. Weiss, 87 Texas, 620.

The appellant bank claiming under Hobson and the Citizens Railway and Scott claiming under Hobson's company, were bound by their executory contract to run the Dummy four trips each way each day for five years, from 1892, and the breach of this gave appellants Parker and others the right to collect the debts previously due them by the Dummy by a foreclosure of the $50,000 trust deed, and they were not estopped by the obligation in the Hobson contract to free the Dummy property from incumbrances, nor were appellants estopped by appropriating the proceeds derived by a sale of the four blocks of land to the payment of the Citizens Bank debt.   Our Supreme Court defines the rights of appellees in Hearne v. Garrett, 49 Texas, 625, as follows: "When a contract has been wrongfully and without sufficient cause broken or annulled by one party it may be disregarded by the other." And in such case the bank, Scott and his railway, "would be estopped from setting up the contract as a bar to" recovery of the title acquired by Parker and others under the $50,000 trust deed foreclosure.   7 Am. and Eng. Enc. of Law, 2 ed., 150, 152, 153, 315, 316.   To constitute an estoppel the act must be shown to have had a direct or immediate influence upon the conduct of the party claiming its benefit.   Scoby v. Sweatt, 28 Texas, 730; Koenigheim v. Sherwood, 79 Texas, 508; Irvin v. Ellis, 76 Texas, 168.   A future promise not ground for estoppel. Edwards v. Dickson, 66 Texas, 618; Jones v. Parker, 67 Texas, 82.

The court erred in decreeing the Graves judgment to be superior to the claims of Parker and others.   Howe v. Harding, 76 Texas, 17.

GAINES, CHIEF JUSTICE.—This case as tried was the result of the consolidation of two suits.

The first was brought by the Farmers and Merchants National Bank of Waco against H. C. Scott and the Citizens Railway Company, a corporation operating street railways in the city of Waco, for the recovery of certain property in and near said city known as the Dummy Street Railway.   The defendants in that suit filed a general demurrer, a general denial, a plea of not guilty and also specially pleaded, asserting title to the property and setting forth the nature of the claim.

The second suit was brought by J. E. Parker and others against the

Farmers and Merchants National Bank for the recovery of the same property, or in the alternative to enforce a lien upon it. Upon motion of the plaintiffs in this case, the two suits were consolidated. The petitions and answers of the several parties fully set out the facts as subsequently developed by the evidence and we deem it unnecessary to set them forth in detail here. The case was submitted to the jury upon special issues requested by the respective parties and a verdict was returned in response thereto. Thereupon a judgment was rendered in favor of the Farmers and Merchants Bank for the recovery of the property in controversy and for the recovery of certain sums of money against the Citizens Railway Company for rent, damages, etc. Parker and his associates were also decreed to have a lien upon the property for a sum of money found by the jury to be due them.

All parties having appealed, the judgment was affirmed by the Court of Civil Appeals.

Each of the parties has applied for a writ of error to this court, and all the applications have been granted.

For the sake of brevity in discussing the questions in the case the Waco Dummy Street Railway Company will be designated as the "Dummy company," the Waco Electric Railway and Light Company as the "Electric company," and Parker and his coplaintiffs as "Parker and his associates."

The undisputed facts as shown by the evidence introduced upon the trial are as follows:

The property is a suburban street railway and was constructed by the Dummy company, a corporation chartered under the general laws of the State. The company began to operate the railway in February, 1891, but in a few months it suspended the operation of the line, became insolvent and ceased to be "a going concern." On April 15, 1891, the company, through its proper officers, executed a mortgage to the Citizens National Bank to secure an issue of bonds amounting to $50,000. There was a power of sale to the bank as trustee, and a power to substitute another trustee in case the bank failed or refused to act. This mortgage was duly recorded. One Sleeper, the secretary of the corporation, was authorized by resolution of the board of directors to sell the bonds at not less than par—but the resolution also provided, in effect, that, in the event he failed to make a sale, he should hold them as security to protect the directors against liability upon certain indorsements they had made for the company.

In May, 1891, the Dummy company inflicted personal injuries upon one J. H. Graves, and on March 7, 1893, he recovered in the District Court of McLennan County a judgment for $2000 for such injuries.

On the 5th day of November, 1891, the Dummy company executed to R. H. Rogers a deed in trust with a power of sale upon its property, in order to secure an indebtedness due by it to the Citizens National Bank of Waco amounting to $8813.37.

On April 4, 1892, the Dummy company in pursuance of a resolution

of its board of directors and acting through its proper officers conveyed the property in controversy to the Electric company—a then existing corporation.

On the 7th day of June, of the same year, Rogers as trustee sold at public outcry the property mentioned in the mortgage to secure the Citizens National Bank and it was bid off by W. J. Hobson. Suit having been brought against the Electric company, its property was placed in the hands of a receiver; and by order of the court its property, including that in controversy, was sold by a special master on the 7th day of May, 1895, and defendant Scott became the purchaser. The defendant the Citizens Railway Company has Scott's title.

On the 5th day of November, 1895, the property was sold under an execution issued on the Graves judgment, and the Farmers and Merchants Bank having become the owner of that judgment bid off the property for the sum of $270, and having credited its bid upon the execution received the sheriff's deed.

On June 14, 1894, the Farmers and Merchants Bank recovered a judgment against the Electric company and W. J. Hobson, and on the 7th of May, 1895, at a sale by the sheriff under an execution issued upon that judgment, the bank became the purchaser of Hobson's interest in the property for $1000, crediting the amount of its bid less the costs upon the execution.

On the 2d day of June, 1896, W. M. Sleeper, as substitute trustee under the mortgage of April 15, 1891, sold the property and at the sale Parker and his associates became the purchasers.

Other facts as shown by the undisputed evidence, or as established by the findings of the jury, will be stated in connection with the discussion of the questions in the case.

Parker and his associates claim title as purchasers at the sale by the substitute trustee under the mortgage of April 15, 1891, to secure the $50,000 of bonds. They also claim, in the alternative, damages for the failure of the Electric company to construct and maintain its line of electric railway to Alta Vista as it agreed to do in the contract of sale by the Dummy company to it; and also claim a vendor's lien upon the property to secure such damages. The Farmers and Merchants Bank claims title by virtue of its purchase at the sheriff's sale under the Graves judgment and also by virtue of Hobson's purchase at the sale by Rogers, trustee, and its subsequent purchase of Hobson's title at the sheriff's sale by virtue of its judgment and execution against him. The Citizens Railway Company asserts title by virtue of the conveyance by the Dummy company of its property to the Electric company and of the purchase by Scott of the property of the latter at the sale by the special master and of the conveyance by Scott to it.

If the bonds which were intended to be secured by the mortgage of April 15, 1891, had been disposed of so as to make them an existing obligation against the Dummy company, then the mortgage to secure them would have constituted a first lien on the property, and the sale by

virtue of the power given in that mortgage would have passed the title free of all other claims—save possibly that of the Graves judgment. Logically, therefore, the validity of that sale is the first question to be determined.

The bonds intended to be secured by this mortgage were never sold. As we have seen, by a resolution of the board of directors of the corporation, they were ordered to be held by the secretary to secure the directors against certain obligations incurred by them on behalf of the corporation. Each of the directors had indorsed the paper of the company for the different amounts, and these indorsements were antecedent to the attempted pledge of the bonds. In response to an issue submitted at the request of the Farmers and Merchants Bank the jury found that these bonds were not pledged with the concurrence of all the stockholders of the Dummy company. A director of a corporation can not act for it in a matter in which he has an adverse interest. Tennison v. Patton, 4 Texas Ct. Rep., 463, 95 Texas, 284. All the directors being interested in the pledge of the bonds, there was no one to act for the company, and the resolution that was passed, not having been concurred in by all the stockholders, in our opinion the attempted pledge was void, and the sale under the power given in the mortgage was therefore of no effect.

This brings us next in order to the question of the title of the Farmers and Merchants Bank. We will first discuss the title claimed by virtue of its purchase under the execution against the property of the Dummy company issued upon the Graves judgment. At the time of the sale under execution the property had been conveyed by the Dummy company to the Electric company; but the bank alleged in its pleadings, in effect, that that conveyance was made with the intent to defraud the creditors of the Dummy company. If so, the conveyance was void as to the bank as the assignee of Graves, for the liability for which the judgment was rendered existed at the time the conveyance was made. The undisputed evidence showed that the directors of the Dummy company, or at least some of them, owned lands near a locality known as Alta Vista, the terminus of the Dummy company, and that a part of the consideration of the sale of the Dummy company to the Electric company was the promise on part of the purchaser to operate a street railway to that point for the term of five years. The jury found that this stipulation was made for the benefit of the directors of the Dummy company; and they also found, that, at the time, that corporation was insolvent. Clearly a conveyance made by an insolvent corporation for the benefit in whole or in part of its directors is fraudulent as against its creditors. It follows, that the sale made by virtue of the execution upon the Graves judgment passed the title, subject to existing incumbrances, unless the sale by the special master to Scott passed the title to the property free of the claim against it of the Farmers and Merchants Bank, as the assignee of the Graves judgment.

If at the time the decree was entered which ordered the sale of the

property of the Electric company the bank had not been a party to the suit in which the receiver was appointed, the authorities seem to hold that the purchaser would have been in no better position with respect to that matter than was the Electric company. Foster v. Barnes, 81 Pa. St., 377; Hackensack Water Co. v. DeKay, 36 N. J. Eq., 548; Dann Manufacturing Co. v. Parkhurst, 125 Ind., 317. We are of opinion that such holding is correct upon principle. It would follow, therefore, that had the bank not become a party to the proceeding, it would, after the sale and conveyance by the special master, have been at liberty to proceed against the property as that of its judgment debtor the Dummy company, and to have caused it to be sold under execution, and having purchased at that sale to have contested with the purchaser at the sale under the receivership the validity of the conveyance from the Dummy company to the Electric company. The same result would have followed had the decree, the bank being a party, ordered the property to be sold subject to its claim.. But as to the decree which was actually made, the statement of facts contains the following recital only with reference to the Farmers and Merchants Bank: "The decree after sustaining a general demurrer to the pleadings of the Farmers and Merchants National Bank and striking out its answer and cross-bill, without prejudice to the rights of said Farmers and Merchants National Bank as to its claim of lien upon the property and franchises of the Waco Dummy Street Railway therein described as the property of W. J. Hobson, the suit was dismissed as to the defendants W. J. Hobson and A. Schuster, and the court proceeded," etc. The decree was of the date of April 5, 1895. The sale was made by a special master as commissioner of the court, was reported and duly confirmed—all during the same year. The Farmers and Merchants Bank dismissed its intervention in October, 1897, and on December 20, next thereafter, the final decree in the case was rendered. It was formally admitted upon the trial that the final decree did not affect the rights of the bank. What the bank's plea of intervention contained the evidence does not show. Its claim as assignee of the Graves judgment is not mentioned in the decree; but we think it is to be presumed that it set up all its equities on that suit. At all events, we think that when property in the hands of a receiver has been sold by a decree of the court, which directs a sale without reservation as to the rights, legal or equitable, of any party to the suit, the sale pursuant to such order passes the title free of all claims of any party thereto. So, if, as in this case, the sale is ordered without prejudice as to a particular claim of one of the parties, the sale frees the title of all other claims by the same or any other party to the proceeding. In other words, the sale of property in the hands of a receiver in pursuance of a decree for such sale passes the title and claims of all parties to the suit which are not excepted or reserved by the terms of the decree. We conclude, therefore, that the Farmers and Merchants Bank took no title by virtue of its purchase at the sale by the sheriff under the Graves judgment.

The question then arises as to the claim of title of the Farmers and Merchants Bank through its purchase under its judgment and execution against Hobson. In order to dispose of this question, it becomes necessary that we shall give in some detail the facts in relation to that matter. Hobson was the promoter and principal stockholder of the Electric company. That company was incorporated under the general laws of the State about February 26, 1891. On April 6, 1891, a contract was entered into between one Childress, as trustee, on behalf of himself and others, in which the Electric company obligated itself to construct a line of street railway along certain streets of the city of Waco to the Waco Female College, through the lands of Childress and his associates, and to operate the same for the period of five years; and in consideration thereof, Childress, in behalf of himself and associates, bound himself and them to convey to the company four blocks of lots in the University Heights addition to the city. The company at the same time gave two bonds to Childress as trustee, one with and one without sureties, to secure the performance of the contract on its part. On June 4, 1892, Childress and others filed a charter for the organization of the University Land Investment Company, and on the 14th day of the same month he conveyed the four blocks previously mentioned, in connection with a large body of other lands, to that corporation. August 1, 1892, the University Land Investment Company conveyed the four blocks of land to Hobson. The deed recited that it was made "in accordance with the contract, of April 6, 1891, between A. M. Childress, as trustee, for himself and associates, of the first part, and the Waco Electric Railway and Light Company, of the second part." This shows the derivation of Hobson's title to the four blocks, which as we shall hereafter see was the sole consideration which passed from him in satisfaction of his bid for the property of the Dummy company at the sale by Rogers as trustee.

The following are the facts which led up to the sale last mentioned: On March 8, 1891, Hobson in his own name entered into a contract with the Dummy company by which the company agreed to sell him its property, except the rolling stock, and in consideration thereof he agreed to convey to the company the four blocks of land in the University Heights addition hereinbefore mentioned, for the acquisition of which the Electric company then had a contract with Childress and his associates. The contract was assented to in writing by all the stockholders of the Dummy company and contained other stipulations not necessary to mention in this connection. On April 4, 1892, the directors of the Dummy company met and adopted a resolution authorizing a conveyance of its property to the Electric company. On the same day its stockholders met and passed a similar resolution; and immediately thereupon, J. E. Parker, as president of the Dummy company, executed to the Electric company a deed conveying the property in accordance with the resolution. A copy of the deed is not set out in the statement of facts, but it does appear that the deed was made in accordance with

a resolution approved by J. W. Johnson, one of the directors, and unanimously adopted by them. This resolution provided that the deed should obligate the Dummy company to free the property from all incumbrances and should "recite a cash consideration of $7500 and the obligation of said Electric company and of said Hobson to operate said roads five years from date of equipment by making four round trips each day each way." The testimony shows that it was agreed by some of the officers of the Dummy company that in order to free the property of all incumbrances, it was best to have a sale made under the mortgage to the Citizens Bank, in which Rogers was named as trustee; and one or more of the officers of the Dummy company procured the property to be advertised for sale, under the power contained in that mortgage. In reference to that matter John Sleeper testified: "I was a stockholder, director and secretary of the Dummy Street Railway Company. The trustee's sale by Robert H. Rogers, trustee of the property of the Dummy Street Railway Company, including its line of railway, in June, 1892, was made for the Waco Electric Railway and Light Company, and the purpose of such sale was to clear the title, under the original deed of trust. I know this by acting in that matter, and I did it in part. Myself and Mr. Parker, the president, did it. Mr. Hobson had nothing whatever to do with it until he went over with me and bought it. He, Hobson, bought it for the benefit of the Waco Electric Railway and Light Company under an agreement between us all. It occurred in this way: On the day Rogers as trustee was to make the sale I went and got Mr. Hobson and brought him here to the courthouse, and stood there as it was sold by Mr. Rogers, and Mr. Hobson bought it in. When I went to Mr. Hobson I went for the purpose of getting him to carry out the original contract. I just said, 'Mr Hobson, the railroad is going to be sold to-day, and you just go over and buy it in for the Waco Electric Railway and Light Company.' He said, 'All right,' and just walked over there with me and the deed was made out by Rogers to Mr. Hobson, and Mr. Parker paid Mr. Rogers $25 for executing the deed."

Hobson's testimony as given upon a former trial was read in evidence and was as follows:

"I was president and a director of the Waco Electric Railway and Light Company on the 7th day of June, 1892, and had been such president and director ever since its organization. It was incorporated on the 26th of February, 1891, and we organized shortly after that, but I don't know the day. I don't think it was more than a month or two afterwards. It was certainly in the early part of 1891. I don't think I paid any money at the trustee's sale made by Robert H. Rogers on June 7, 1892. I paid some property, four blocks in University Heights addition. They belonged to me. How they came to be mine was that they were deeded to me by Mr. Childress, or the University Heights Company, rather, as a bonus for extending the street railway through

97 Supreme—4.

their land. I made a contract with them. I made. it in the name of the Waco Electric Railway and Light Company. [Here the contract in evidence was shown him and he identified it as a duplicate.] The signature to that contract, W. J. Hobson, president of the Waco Electric Railway and Light Company, and the signature of Sam Hobson as secretary are genuine signatures and the seal of the company is duly impressed thereon. Why I claimed these lots was because I earned them, as promoter. This contract, however, was made after the company was incorporated. The contract shows that as president of the Waco Electric Railway and Light Company, and with the consent of the directors, I made this contract to run the electric road out there to that property and over that property, in consideration of a donation to the company of these four blocks. Yes, that is true. It would seem that those four blocks [were] donated to the company, but that actually, as I understood it at the time and since, [they] belonged to me. The consideration I paid for the four blocks was time and money. Yes, I was president of the company and a director but I was not getting any salary. I did not get any pay for my time. I was also the main stockholder,—owned most of the stock. I do not think anybody else owned any at that time, except there [were] some few shares held by parties here. Bart Moore was a director, and so was Mr. John Sleeper, and so was Judge Williams. It is a fact that the Waco Electric Railway and Light Company paid for constructing that road out there to the University Heights addition; that is, I paid for it and charged it up to the company. It was built mostly with my money—mainly up to that time. I built it in the name of the Waco Electric Railway and Light Company." Asked if he had not used the funds of the Waco Electric Railway and Light Company in complying with the Childress contract, he said: "Well, I don't know whether they had any funds. I could not tell without looking the thing up. At that time, I think not. I think I supplied individually about all the funds up to the time they commenced running the cars out there. I loaned this fund to the company and the company built the track out there in accordance with the contract." Here the witness was shown a deed from J. E. Parker, president of the Waco Dummy Street Railway Company, to the Waco Electric Railway and Light Company, conveying the Waco Dummy Street railway, already in evidence, of date April 4, 1892, and he was asked if those lots belonged to him individually why he took that deed to the Waco Electric Railway and Light Company instead of to himself, to which he answered: "Well, I expected it to become a part of the system at that time. I don't know whether I ever saw this deed or not. I could not tell. I don't know that I put it on record. I don't think I did. I don't know whether it was put upon record by anybody or not. If it is so certified, it must have been. I am speaking now of my own knowledge. I don't remember, I know there was such a deed. I heard about it, but I don't think I ever saw it. I don't remember whether I ever did or not. When I bought the property at Rogers' trustee sale,

in June, 1892, I never paid any cash. The consideration that I paid for that purchase was these four blocks of ground out at University Heights, blocks 1, 39, 49 and 57."

As bearing upon the title to the four blocks which were conveyed by Hobson to Parker and his associates, and which were the sole consideration paid for the property at the trustee's sale, a contract between Hobson and one Moore was offered in evidence, which was made in the early part of the year 1891. The contract was as follows:

"It is agreed between the parties hereto that they will subscribe the amounts respectively, W. J. Hobson $150,000 and Bart Moore $50,000, of stock of the Waco Electric Railway and Light Company, under the conditions and agreements as follows:

"W. J. Hobson is to furnish the first money to start the building of said railroad and light plant and is to furnish all the capital needed to complete the plant as follows: An incandescent light plant of at least 2000 lights and enough of the track and cars and power to run the cars to fill all the contracts made by the said railway company with parties who have made donations to secure the building of said road. The money and real estate received from donations and the proceeds of sales of real estate donations are to be used in construction of the road, and the balance is to be made up as aforesaid by said Hobson with the following exceptions, that is, Bart Moore is to furnish the sum or sums altogether of ten thousand dollars ($10,000) as needed for the prosecution and completion of the work for which said Moore is to receive said ($50,000) fifty thousand dollars of stock which he is to subscribe fully paid.

"It is further understood and agreed between said Hobson and Moore that Hobson is to manage the building of the road and light plant, without charge for his time, and Moore is to assist in the same until such time as the plant may be completed and in operation.

"The donations for building said electric railway are to be deeded to W. J. Hobson and Bart Moore personally, as they may agree, or part to each as their interests may appear, to be sold at market prices for the use of the railway company as herein provided."

But the following testimony of Hobson given on a previous trial was then read:

"This paper handed me, which purports to be an agreement between W. J. Hobson and Bart Moore, is in the handwriting of my son Sam, that is, S. A. Hobson. I made that agreement as stated in that contract. That is the contract but it is not all there. There is an addendum to this contract that is not there, that is, an addendum made afterwards. This contract was made in 1891, about the time we commenced building the road. There were several things done after that that qualified that contract very materially.

"The addendum that I spoke of was rescinding that contract and releasing Mr. Moore from it. At that time I had already made contracts for the bonuses, and as I understand it I contracted with Mr.

Moore with reference to the bonuses as my property. Mr. Moore didn't comply with this contract, that is, not fully. He had partially, and I released him from it and paid him up. Mr. Moore paid the first part of that money and he got a note of the company for it. He gave me a note for $2500. He was to pay $10,000. He paid a little over a fourth of it. I made a contract for these bonuses for myself as I understood it. What I mean is, that, whilst I owned the bonuses, I made a contract with Mr. Moore that if he would do those things I would use those bonuses, if necessary, to help build the railroad. When I would sell land I would put it in the railroad and charge it up. I put in other money at the same time. Most of the money was supplied from the outside, gotten by me, and if I sold some of the land and used the money on the road I charged the road with it.

"After I procured the charter for the Waco Electric Railway and Light Company about the 26th of February, 1891, it was hardly a couple of months after that before I organized the company. I don't remember how long; it might not have been two weeks. The stock was not placed at the time I organized the company; the road had not been built at all anywhere,—nothing done toward building it, except I was there inspecting and getting ready to build the road. When I was making the contract for bonuses I made the proposition to Mr. Childress about as set forth in the contract in evidence. I proposed to sign the contract individually, like I had all the other bonuses up to that time. Mr. Childress said he would not sign in that way. I signed the railroad's name because Mr. Childress insisted it be signed that way; the deed was made to me for the land covered by said contract. I told Childress the deed was to be made to me; this was at the time the contract was signed. I told him the property was to be deeded to me; no one ever objected to me having the blocks of ground covered by the contract with Childress. It was known to the directors and stockholders generally that I was to have said blocks of ground. I had an understanding with the Dummy people that they would take these blocks as the consideration and I afterwards conveyed the blocks to J. E. Parker.

"I do not think there were any shares of the Waco Electric Railway and Light Company issued to anyone until May, 1891, except what I had paid in after May 1, 1891. Mr. Shuster and myself owned most all the stock. I do not think at the time of the donation of these four blocks by Childress and his associates it was understood and agreed between me and my associates that said blocks were to be used for the benefit of the company. I don't think it was understood and agreed between the directors of the Waco Electric Railway and Light Company, including Bart Moore, John Sleeper and Judge Williams, that said blocks of ground were to be used for the benefit of the company."

Bart Moore testified that the four blocks of lots were conveyed to Hobson for the benefit of the Electric company. His testimony and that quoted is about all the testimony bearing upon the question of Hobson's title to these blocks.

The contract between Hobson and Moore shows the scheme under which the Electric company's enterprise was inaugurated; and from that contract it appears that Hobson was to furnish the money for the building of the railway and the light plant, and that he was to manage the construction without charge for his time. It also appears therefrom that the bounties the company should acquire, as inducements to the construction and operation of the railway, were to be conveyed to either Hobson or Moore for the use of the company. It was under this contract that the corporation was organized and the work begun. In the contract between Childress and the Electric company, Childress bound himself and his associates to convey to the company, or to such person as it might designate, two of the four blocks of lots, upon completion of the proposed railway from Ninth and Austin streets to the Waco Female College; and the other two, when the road was completed from the public square to the same place. The construction and operation of the railway was to be the consideration of the conveyance, and it is to be presumed it had been constructed and was in operation on August 1, 1892, when the conveyance was made to Hobson. It is evident that the consideration proceeded from the company; and we think, therefore, that, in order to show that Hobson, who was its president at the time the deed was made to him, did not take the title for the benefit of the company, it should have been made to appear that some contract had been legally made between them and the corporation whereby he was authorized to take full title to himself to the property. A corporation may contract through a duly authorized agent, but the authority of the agent must ordinarily be derived from its board of directors acting as a body. It may be that the whole body of the stockholders give such authority, or may at least estop themselves from denying that such authority has been given. There is no pretense whatever, in this case, that there was ever any resolution of the directors or any action whatever of the stockholders of the Electric company which gave Hobson the right to claim the bonus given to the company for the construction and operation of its road. That Hobson may have changed his contract with Moore, or that the directors knew that he was claiming the bonus as Hobson testified, can make no difference. The blocks were earned by the company under a contract in the name of the company, and became equitably the property of the company, unless properly authorized to be conveyed to Hobson for his own benefit. Under the contract with Moore, it is very clear that he could not have claimed the blocks as his own; and while in his testimony he attempts to show that that contract was changed by a subsequent agreement between himself and Moore, he nowhere says that this change was made before the blocks were conveyed to him by the University Land Investment Company. But leaving that contract wholly out of view, we fail to see how under the facts of this case Hobson could claim the property as his own in the absence of some corporate action on the part of the company which authorized him to take a conveyance of the property for his own use.

If, without salary or other compensation, he rendered services in the advancement of the enterprise, and if he furnished his own money to construct the road, this may have entitled him to compensation by the company, but it did not entitle him to take and hold the property of the corporation as his own unless authorized to do so by the corporation itself. We therefore conclude, that when the four blocks of lots were conveyed by the University Land Investment Company to Hobson he held them in trust for the Electric company.

We come next to the question as to the effect of the sale by Rogers, as trustee, at which the property of the Dummy company was bid off by Hobson. In regard to this matter the first inquiry which suggests itself to our minds, is, was this a sale which passed any title whatever? The property was mortgaged to the Citizens National Bank to secure the payment of an indebtedness due to it by the Dummy company. It seems, though the testimony is not direct upon the point, that, at the time the property was advertised and at the time it was sold, this indebtedness had not been paid. Therefore the trustee was empowered to sell the property for cash to pay the indebtedness. The sale was made to clear out the title of the Electric company, as the evidence showed and as was found by the verdict of the jury. With the view to carry out the purpose of clearing out the title, a sale in form was made; the property was bid off by Hobson for the sum of $7500; but the money was never in fact paid. The bank, the mortgage creditor, recovered nothing. The only consideration of the deed which was executed was the conveyance of the four blocks of lots previously mentioned—not to the mortgagee, the bank, but to Parker, presumably as the representative of the Dummy company or of its directors. The contract between the Dummy company and the Electric company bound the latter to convey the blocks upon compliance by the former with the terms of the agreement, and hence that conveyance could not constitute a consideration for another contract. We note just here that it is insisted on behalf of the Farmers and Merchants Bank that Hobson was entitled to the lots under his original contract with the Dummy company, which was in his individual name, and as is also insisted for his own benefit. The answer to this claim is, that he could never have acquired title to the lands except by complying with the terms of that contract. This he made no pretense of doing, but permitted the Electric company, of which he was president, to take his place in the contract, and to accept the conveyance of the Dummy property. That he may not have been present when the deed was executed can make no difference. He admits that he knew of the deed and does not testify that he made any objection to the transaction or asserted at the time any claim as against the rights of the Electric company under the conveyance. The testimony admits of no conclusion other than that the whole transaction was carried out by his consent, if not by his procurement. We think he and those who claim under him should be held estopped to deny that the

Electric company was properly substituted to his place under his original contract.

It is worthy of note, that, in the transaction which resulted in the sale by Rogers as trustee, so far as we have been able to see from the testimony, the Citizens National Bank, the mortgagee, does not appear. It did not order the sale nor did it receive any money or any equivalent therefor upon the bid of Hobson. This is probably accounted for by the fact that the debts due to it from the Dummy company were secured by the signatures of its directors or some of them.

The only deduction from the testimony is that the sale was a mere scheme to clear the title, which had been conveyed by the Dummy company to the Electric company, and that this was done in pursuance of that provision in the contract between the two corporations that the title to the Electric company was to be freed from incumbrances. Therefore we fail to see how Hobson, the president of the latter company, could by purchasing at such sale acquire title as against that company.

So far we have treated the questions just considered upon the facts which we think are shown by the undisputed evidence adduced upon the trial. The chief embarrassment in the determination of the questions grows out of the findings of the jury upon the special issues submitted to them. The Court of Civil Appeals held, that, since the assignment to the action of the trial court in refusing to set aside the verdict was too general to be considered, the findings of the jury should be taken as established facts and binding upon the appellate courts. Ordinarily this is the true rule; but whether such rule is inflexible and should be deemed to apply in a case like this, where the issues submitted were as to isolated facts and some of the findings appear to be directly in conflict with the evidence, we need not determine.

We will briefly consider some of these findings, as to their effect upon the true issues in the case.

First. In response to an issue submitted by the Farmers and Merchants Bank the jury found, in effect, that the consideration of the conveyance of the four blocks to Hobson "moved from Hobson to the makers of the deed" "in money and services." As we think, this was not a controlling issue in the case. The evidence was probably sufficient to show that he furnished the money to construct the railway of the electric company and rendered service in its construction. It does not follow that he did not advance the money and render the services for the company. As we have already said, he may have had a claim against the company for the money and services, but could not claim the lots which were the consideration of the construction of the road, which was built by and for the company, without some action on the part of the directors of the corporation which gave him that right.

Second. The jury also found, in response to an issue submitted by the bank, that it was the intention of the makers of the deed to Hobson and of Hobson himself to vest title in him for his own benefit. We

think it immaterial that the parties to the deed may have intended to invest the title in Hobson for his own use. This intention exists in every case of a constructive trust.

Third. It was also found by the jury that Hobson "was owner" of the blocks. He was the owner in the sense that he held the legal title. It does not follow, that he held the equitable title. Besides the issue, as to the ownership of the lots involved, under the evidence, questions of law and fact, and there having been no instructions as to the law applicable to the issue, it is impossible to determine what were the facts found by them. They may have been mistaken as to the law and this mistake may have led to the finding.

Fourth. We also think it immaterial, as found by the jury, "that it was agreed between Parker and his associates, being directors of the Dummy company, on the one hand, and Hobson on the other," that they accepted the four blocks in payment of his bid.

Fifth. The jury also found that Childress entered into the contract to build the electric line with "Hobson as an individual." Since the contract was in writing and was made with the Electric company, it is difficult to conceive the meaning of this finding, unless it be that Hobson made the contract with the intention that it should inure to his own benefit. He testified himself that Childress refused to contract with him personally, but consented to contract and did contract with the company. That Hobson may have intended the contract for his own benefit can, as we think, make no difference. It was the contract of the company.

Sixth. In answer to an issue in substance whether Hobson paid any money for the four blocks, and if so when, how much and to whom did he pay it, the jury found simply, "Yes, in completion of road, money and services paid to A. W. Childress." This finding is incomplete, and for that reason should probably not be considered; but if considered, it amounts to no more than a similar finding in response to an issue submitted at the request of the bank, the effect of which we have already discussed.

Seventh. The following issues were submitted as one, at the request of Scott and the Citizens Railway Company, and to them the accompanying answer was given: "Did W. J. Hobson pay out any money as a bidder at said sale? And did he give any consideration for the deed made to him by said Rogers as trustee?" Answer: "He did." In view of the fact that the undisputed testimony shows that no money was paid at the sale, except $25 which was paid by Parker to Rogers, trustee, for making the deed, and with money which he testified "belonged to the concern," it is incomprehensible to us that the jury should have intended to find the affirmative of the first question submitted in the issue. We therefore doubt whether it should be deemed a finding as to that matter at all. But whether deemed a finding or not, we think it unimportant. Not having found that Hobson paid $7500, the amount

of his bid, it seems to us wholly irrelevant that he paid some money to some person.

But it is urged on behalf of the Farmers and Merchants Bank, that, for the reason that the Electric company was without power to acquire and hold lands for any other purpose save for that of operating its railway and light plant, it acquired no right to the blocks. On the other hand, it is contended, that, under our Revised Statutes, the corporation was authorized' to acquire the blocks of land to aid in the advancement of its enterprise. We do not find it necessary to decide the latter question. The case principally relied upon in behalf of the bank, is Case v. Kelly, 133 U. S., 21. The point there decided is, that, when a corporation is not empowered to take and hold lands, a court of equity will not aid it to enforce a trust and thereby acquire the title to land. The position of the defendant in that case with reference to the lands there in controversy was very similar to that of Hobson with respect to the four blocks of lots, the title of which is in question in this suit. But the general rule is that only the State can take advantage of the want of power of a corporation to take and hold real estate. The Supreme Court of the United States so held in the case of Fritts v. Palmer, 132 U. S., 282; and the same principle was announced by that court in the case of National Bank v. Matthews, 98 U. S., 621. It was also followed by this court in the case of Russell v. Railway Co., 68 Texas, 646. In the case last cited, a railroad company was held entitled to maintain its action to remove a cloud from its title to land, although it may not have been empowered by its charter to acquire the lands. Judge Thompson says: "Another way of expressing the same doctrine is to say that whether a corporation has violated its charter or exceeded its powers in taking a conveyance of land will not be inquired into *collaterally,* in an action between private parties contesting the title to the land." Thomp. on Corp., sec. 5799. The ruling in Case v. Kelly, above cited, does not appear to us quite consistent with the general rule recognized by the court which rendered it. But we need not inquire into its correctness. The Citizens Railway is not, in this case, seeking to establish title to land which it could not acquire and hold, but to property, namely that of a street railway company, which it had the power to acquire and hold. Its equity is not less potent because, at one time during the transmutation of the title to the four blocks, the Electric company may not have been able to establish a trust in its favor against Hobson. We may remark just here, though out of the proper connection, that the doubt as to the corporation's power to take title to the blocks throws light upon the stipulation in the contract between Hobson and Moore, which provided that the title to the lands given as bounties should be taken in the names of one or the other of them, and that the lands so acquired should be sold and the proceeds applied to the use of the railway company. We conclude upon this point that the Farmers and Merchants Bank can not defeat the title of the Citizens Railway Company on the ground that

the Electric company was not authorized by its charter to take and hold title to the four blocks. But should we be in error in this it can make no difference. Since we have concluded that Hobson could not claim title as against the company of which he was the president by virtue of the sale by Rogers, it is immaterial whether he had title to the blocks which he conveyed in satisfaction of his bid. If he had title to the four blocks, it may have given him a claim against the Electric company for either their value or the amount of his bid.

The jury found that the Dummy railway and the Electric railway were parallel and competing lines; and the point is presented that therefore, under section 5 of article 10 of the Constitution, the latter, Electric company, could not acquire the Dummy line. But we are of opinion, that that section applies to railroads proper, and not to street railways. Section 7 of that article does apply to street railways and there they are specifically named. Ordinarily, when we speak of a railroad, we mean a railroad over which freight and passengers are transported from one town or city to another; when we speak of those roads on which passengers are transported over the streets of a town or city, we call them street railways.

The next questions in order grow out of the claim of Parker and his associates for damages for the failure of the Electric company to run its cars to Alta Vista for the term of five years. The claim is that that stipulation in the contract was placed in it for the benefit of Parker and other directors of the Dummy company, who owned lands in the vicinity, which were to be enhanced in value by the construction and operation of the line. They recovered a judgment for the damages, with a decree enforcing a lien, in the nature of that of a vendor, upon the property. It is maintained that this decree is justified by the decision of this court in the case of Howe v. Harding, 76 Texas, 17; but we think the two cases may be readily distinguished. In Howe v. Harding, a right of way had been granted by deed to a railroad company over land, the consideration of the conveyance being a promise on part of the company to construct a water tank on the land to be supplied from a spring and to pay appellee for the use of the water as much as it should pay other persons along its line for a like service. The tank was discontinued and appellee sued for damages and for enforcement of a lien upon the right of way to secure the judgment. He was held entitled to his damages and lien. The nature of the contract appears from the following extracts from the opinion: "It was shown that in 1866 title to the entire tract of land over which the right of way was granted was in Nancy S. James, but appellee was permitted, without objection, to state that she heard the contract read, and that it was made for his benefit with her consent, the inference being that the promise was made directly to him, and that he had lived on the land and been in actual possession since 1854, claiming it; that his homestead of 200 acres was nearly 1000 varas square, over which the road ran more than one mile circuitously, and that on this was the elevated

spring and water tank. Miss James was shown to be a near relative, who had been a member of appellee's family for more than fifty years, and the inference from the evidence is that while title to a part of the land, or it may be the whole, stood in her name, that the beneficial interest was in appellee. \* \* \* If the appellee was the owner of the land over which the railway runs, under the uncontroverted facts the company has the right to it whether he signed the conveyance or not; but as compensation provided by the contract for water service was, in part at least, the consideration thereof, a lien on the right of way, though but an easement, exists to secure, in so far, its payment." It thus appears, that in that case the promise to maintain the tank, etc., was made directly to the appellee. Now this court has held, that, in a transaction for the sale of land, a note given to a third person by the vendee as the consideration of the sale may carry with it a lien upon the land for its payment. Pinchain v. Collard, 13 Texas, 333. If it be so with a promise to pay money, why not with a contract to do some other thing as a consideration for the conveyance? But in this case, there was no promise to Parker and his associates to give a lien, or in fact to do anything; and we think none should be implied. The benefits which were expected to accrue to them were remote and collateral to the transaction. Besides, as we think, it was incompetent for them, being directors of the company, to stipulate for their own benefit.

Another question suggests itself. The Dummy corporation being insolvent and the directors having transferred the property, in part at least, for their own benefit, can a court afford them relief by way of giving damages for a breach of the contract? Eastham v. Roundtree, 56 Texas, 110; Davis v. Sittig, 65 Texas, 497.

The evidence does not clearly show the time at which the Electric company definitely abandoned the operation of its line to Alta Vista, and therefore we forbear the discussion of the question of the statute of limitations, which was pleaded as to the claim of Parker and associates for damages.

For the reasons given we think that the judgment of the Court of Civil Appeals and that of the District Court should be reversed and the cause remanded, and it is accordingly so ordered.

*Reversed and remanded.*