NEW ENGLAND WATER WORKS CO. et al. **v.** FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Seventh Circuit. February 7, 1905.)

No. 1,073.

1. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY.

Where a bill against numerous defendants for the foreclosure of a mortgage alleged that certain property nominally owned by a defendant other than the mortgagor was within complainant's mortgage, under a clause covering after-acquired property, in which claim some, but not all, of the defendants were interested, such claim created a separable controversy, which rendered the cause removable by the defendant claiming ownership of the property; the requisite diversity of citizenship being shown between the parties interested therein.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, §§ 102, 103, 106.

Separable controversy ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

2. MORTGAGE—AFTER-ACQUIRED PROPERTY—EXTENSIONS OF WATER PLANT.

A water company owning a plant and a franchise for supplying water to the inhabitants of a city executed a mortgage to secure an issue of bonds largely in excess of its then indebtedness, a part of which were to be retained by the trustee, and issued only when required for the extension of the plant. The mortgage covered the company's property and franchises, and all extensions and additions thereto, and all after-acquired property. The reserved bonds were issued on the sworn certificate of the officers that extensions were to be made, and a new pumping station, necessary to obtain a supply of pure water and to fulfill the company's contract obligations to the city, was built, and mains extended therefrom and connected with those of the company. Such station and mains were nominally constructed and owned by a second company controlled by the same stockholder, but the station was equipped with the engine from the old station, and they had no purpose or function except to supply water to the pipes of the original company. *Held*, that they constituted the extensions and additions contemplated and provided for by the mortgage, and came within its lien, as after-acquired property, without regard to whether or not they were actually built with the proceeds of the bonds sold for the purpose.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

The bill on which the decree appealed from was based, filed originally in the Circuit Court of Madison County, Illinois, is by the Farmers' Loan and Trust Company, trustee, a corporation of New York, against the New England Water Works Company, a corporation of Rhode Island, the Alton Water Works Company, a corporation of Illinois, the American Loan and Trust Company, a corporation of Massachusetts, the United Water Works Company, a corporation of New York, the Boston Water and Light Company, a corporation of Maine, the International Trust Company, trustee, a corporation of Massachusetts, Charles A. Caldwell, trustee, a citizen of Illinois, and Anson A. Lyman, trustee, a citizen of Massachusetts.

The purpose of the bill is to foreclose a deed of trust executed by the Alton Water Works Company to the Farmers' Loan and Trust Company, to secure an issue of two hundred thousand dollars of bonds, one hundred sixty-nine thousand dollars of which were then outstanding, thirty-one thousand dollars being still held to take up the bonds issued under a prior mortgage to Caldwell, trustee. The property mortgaged was the franchises of the Alton Water Works Company, together with the plant, and all after acquired property.

The bill avers that subsequent to the execution of these mortgages, the Alton Water Works Company conveyed its property and franchises to the New

England Water Works Company, subject to the mortgages mentioned; that, thereupon, a year later, the New England Water Works Company executed its trust deed to the American Loan and Trust Company of Boston, purporting to cover all its property and franchises, to secure an issue of three hundred thousand dollars of bonds, two hundred thousand of which was to be reserved by the trustee to take up the bonds outstanding under the previous mortgages; that after the making of such mortgage, the mortgaged property was extended and enlarged by the installation of a new pumping station, on the banks of the Mississippi above the town of Alton, and the laying of mains connecting such pumping station with the water works system of Alton; and that such new pumping station and connecting mains were "after acquired property" within the meaning of the mortgages.

The bill sets forth that the Boston Water and Light Company claims to have an interest in the property described, particularly in the new pumping works; that the International Company claims to have an interest as trustee, in a mortgage by the Boston Company, on an issue of bonds by the Boston Company upon the property claimed by it; that the United Water Works Company claims to have a judgment lien for the sum of twenty-five thousand, sixteen dollars, and sixty-five cents, upon the property of the New England Company conveyed; and that Lyman claims to have a chattel mortgage lien upon the property conveyed. The bill denies the existence of any of these interests or liens, calls for strict proof thereof, and avers that whatever interests or liens such defendants may have, are subject and subordinate to the lien of the said trust deeds.

The prayer of the bill is, that an accounting be taken of the amount due on the bonds issued under the Caldwell trust deed, and of the amount due on the bonds issued under the Farmers' Loan and Trust Company deed; that the amount found to be due may be decreed to be a lien upon the property mortgaged, including all after acquired property; that the equitable ownership of the new pumping works, and connecting water mains, may be ascertained, and the amounts due thereon and paid thereon, provided for; and that it be decreed that after a day fixed for payment of the amount so found due, the property and franchises, including the after acquired property covered by the trust deeds, be foreclosed.

Thereupon, before any other pleadings were filed by it, the Boston Water and Light Company removed the case into the United States Circuit Court, for the Southern District of Illinois, the petition for removal averring that as between the Farmers' Loan and Trust Company, a citizen of New York, and the Boston Water and Light Company, a citizen of Maine, there was a separable controversy growing out of the Farmers' Loan and Trust Company's claim that the trust deed to it covered, in addition to the property specifically mentioned, the new pumping station and connecting water mains already mentioned; and a motion by the Farmers' Loan and Trust Compay to remand having been overruled, the case went to hearing in the United States Circuit Court. Answers were filed by the Boston Water and Light Company, the Alton Water Works Company, the New England Water Works Company, the American Loan and Trust Company, the International Trust Company, Lyman and Charles A. Caldwell; and also a cross bill by Charles A. Caldwell, setting up the trust deed executed to him, and asking for its foreclosure. The answers admit the execution of the mortgages, the amount of bonds outstanding thereunder, the default in interest payments thereon; the answers of the Boston Company, the International Company, the Alton Company, Lyman, and the New England Company, denying that the new pumping station, with its connecting mains, are after acquired property within the meaning of the mortgages sought to be foreclosed. On the hearing on the issue thus made, the following facts were brought out:

The original water company in the city of Alton was the Alton Water Works Company. It had a franchise that ran until 1902. On this franchise, together with the plant, the company executed its trust deed to Caldwell, as trustee, to secure an issue of bonds not to exceed seventy-five thousand dollars.

In 1886, of the bonds thus authorized, forty-six thousand had been actually issued. At that time, the stock of the company was purchased by one C. H.

Vennor, who almost immediately caused the company to make the new mortgage in question for two hundred thousand dollars, to the Farmers' Loan and Trust Company, covering its property and franchises, and all extensions and additions thereto, and all after acquired property. In this mortgage it was provided that fifty thousand dollars of the new bonds should be retained by the trustee for future extensions and improvements; that one hundred and four thousand dollars should be issued forthwith to the company; and that forty-six thousand dollars should be retained by the trustee to take up the forty-six thousand dollars outstanding under the Caldwell mortgage.

Under this arrangement the one hundred and four thousand went to Vennor; the fifty thousand, on the sworn certificate of the president and secretary of the company that extensions were to be made, were delivered to Vennor; and fifteen thousand of the Caldwell bonds were taken up by fifteen thousand of the forty-six thousand in the trustee's hands.

In 1893, the Alton Water Works Company conveyed its property and franchises to the New England Water Works Company, subject to the mortgages mentioned. Thereupon, a year later, the New England Company executed its trust deed to the American Loan and Trust Company of Boston, covering all its property and franchises, to secure three hundred thousand of bonds, two hundred thousand to be reserved by the trustee to take up the bonds outstanding under the previous mortgages, and one hundred thousand to be issued to the New England Company. It is said by Vennor in his testimony, that the one hundred thousand thus issued to the company, were sold by him at par.

The property of the Water Works Company at this time consisted of a reservoir, or tank, a pumping station equipped with a Corliss pump, and about twenty-six miles of water mains. Other than a bill of two thousand dollars for current expenses, it is not shown that the earnings of the company did not meet the current expenses. The record traces into the hands of Vennor, as stockholder of the two companies, fifty thousand dollars of bonds issued for extensions, and the one hundred and four thousand issued to the Company. What was done with those bonds, or their avails, is not clearly shown. What is clear, however, is that under any honest financing, these bonds or their proceeds, except such as had already been utilized in improvements and extensions, would have been available for the improvements and extensions that the city was about to demand.

In 1897 the Water Works Company was informed by the city that the water distributed was contaminated above the pumping station, and was asked to take water from a point further up the river; as also that the water be improved by the use of a filter. Instead of making these changes, and installing, if necessary, a new pumping station in the right of the existing water company, and under an extension of its franchises, Vennor, who had control of the company, caused the Boston Water and Light Company, of which he also had control, to install, as a separate enterprise, the new pumping station, and to lay the necessary lines of pipe for that purpose; at the same time dismantling the pumping station of the old company, and transferring its machinery to the new; and joining the pipes of the new with the pipes of the old, in the city of Alton. To cover the supposed cost of this, the Boston Company executed to the International Trust Company of Massachusetts, a trust deed to secure the issue of two hundred thousand dollars of bonds, but eighty-five thousand of which were actually needed. And, thereupon, a contract was entered into between the two companies, that the New England Company, for the water thus obtained for distribution, should pay all the interest of the bonds thus issued, all the expenses of operating the pumping works, all taxes and insurance, and, in addition, five thousand dollars a year, to be applied as dividend on the capital stock of the Boston Company.

The next step taken by Vennor was to cause the New England Company to put upon its property a chattel mortgage for the sum of fifty thousand dollars, to Anson M. Lyman of Boston, June 5th, 1900, and then to cause the New England Company to execute a judgment note to the United Water Works Company, of which Vennor was also president, on which note a judgment was taken June 9th, 1900, against the New England Company. Thereupon in the County Court of Madison County, Illinois, a creditors bill was filed by the

United Water Works Company, and Taylor, an employé of Vennor, appointed receiver. The defendants to the creditors bill, were the New England Company, the Alton Water Works Company, the American Loan and Trust Company, the Farmers' Loan and Trust Company, Lyman and Caldwell. Besides asking that the property and franchises of the New England Company be put under the management and administration of a receiver, the bill prayed for the sale of such property and franchises, and the distribution of the same among the creditors of the New England Company.

The Farmers' Loan and Trust Company appeared and answered; and on the next day, and in the same court, filed in an independent suit, the bill for the foreclosure now under review, bringing in, as additional parties defendant, the Boston Water and Light Company, and the International Trust Company.

The State Court had proceeded far enough to consolidate the two cases, and to extend the receivership in the New England case over the property ostensibly owned by the Boston Company, when the Boston Company, controlled by Vennor, removed the case into the United States Circuit Court, on the ground, as above stated, that as between it, a corporation of Maine, and the Farmers' Loan and Trust Company, a corporation of New York, there was a separable controversy respecting the question, whether the trust deed to the Farmers' Loan and Trust Company reached to, and covered, the new pumping station, filters, fixtures and water mains ostensibly belonging to the Boston Company.

In its decree of foreclosure, the Circuit Court found that there was due on the Caldwell mortgage, thirty-seven thousand, three hundred thirty-seven dollars, and twenty-two cents, exclusive of twenty-seven hundred dollars represented by past due coupons held by the C. H. Vennor Company; all questions relating thereto being reserved for further consideration. And that there was due on the Farmers' Loan and Trust Company mortgage, two hundred thirteen thousand, five hundred sixty-nine dollars, and twenty-one cents, exclusive of the thirteen thousand, nine hundred eighty dollars represented by past due coupons, held by the C. H. Vennor Company; all questions relating thereto being reserved for further consideration.

The decree further found that the transfers by the Alton Water Works Company to the New England Company, were subject and subordinate to the deeds of trust in suit; that the trust deed to the American Loan and Trust Company was subject and subordinate to the trust deeds in suit; that the trust deed to the International Company, by the Boston Company, was subject and subordinate to the trust deeds in suit; that the contracts between the New England Company and the Boston Company, relating to the supply of water from the new pumping works, were subject and subordinate to the trust deeds in suit; and that the new pumping station, with the connecting mains, including the land on which the station was situated, and all buildings, franchises and privileges relating thereto, were subject to the trust deeds in suit.

Thereupon it was ordered that unless the Alton Water Works Company, within thirty days after the entry of the decree, paid the sum thus found due—being exclusive of the past due coupons held by the C. H. Vennor Company as above stated—together with costs of suit, counsel fees, and other expenses, the property, including the pumping station with the connecting mains, should be sold as an entirety, in the manner therein described. It is from this decree that the appeal under review was prosecuted.

James Hamilton Lewis and S. S. Gregory, for appellants.
William Burry, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above) delivered the opinion:

The case turns chiefly, on two questions: Had the Circuit Court jurisdiction of the cause; and, jurisdiction being assumed, did the court rightly decree that within the meaning of the mortgage to Caldwell,

and the mortgage to the Farmers' Loan and Trust Company, the new pumping station, with its connecting mains, were after acquired property covered by the mortgages.

We are of the opinion that the court had jurisdiction. The whole case created by the bill of the Farmers' Loan and Trust Company, it is true, was the foreclosure of its mortgage, involving thereby all the questions that foreclosure would raise. But within that case as a whole—standing apart from the other questions and from the parties involved therein—was the controversy, between the Farmers' Loan and Trust Company on one side, and the Boston Water and Light Company, and its mortgagee, on the other, whether the mortgage covered the new pumping station, with its connecting mains, or not. To our minds, that controversy is a separable controversy. It involved, not all the questions involved in the foreclosure suit, but only one of them. It involved, not all the defendants to the foreclosure suit, but only the Boston Company, the International Company, and possibly the New England Company, under the latter's promise to pay the interest on the Boston Company's bonds. It had no relation to the questions, the interests, or the parties in the foreclosure suit as a whole, except to add something, that otherwise would have been extraneous, to the property available to the payment of the mortgage debts. And it is a controversy determinable, in and of itself, without reference to the other questions involved in the foreclosure case.

To such separable controversy, the party on one side was a citizen of New York, and on the other side, citizens of states other than New York. The United Water Works Company, a citizen of New York, is not a necessary party; for apart from its being a general creditor, it had no interest in any of the property of the New England Company, except such as grew out of the judgment lien; and the judgment lien of the United Water Works Company did not extend to the new pumping station and mains; for, in the absence of statute to the contrary, judgment liens do not extend to equitable interests; and the New England Company had, at most, only an equitable interest in the new station and mains. Morsell et al. v. First National Bank, 91 U. S. 357, 23 L. Ed. 436. There is no statute in Illinois that changes this common law rule.

The parties to this separable controversy, therefore, having such diversity of citizenship as permits of removal, and the controversy being removed by a party entitled to make the removal, the whole foreclosure suit came with it into the court below. The arguments at bar, in this connection, lose sight of the difference in the language employed by the statute in relation to removal of separable controversies, and the language relating to the removal of cases generally. True it is, that to remove a case from the state into the federal courts on account of diversity of citizenship, the defendant—that is to say, as interpreted by the Supreme Court, all the defendants—must join in the removal. On the contrary, the removal of a separable controversy may be effected "by one or more of the defendants." Chicago, Rock Island & Pacific R. R. Co. v. Martin, 178 U. S. 247, 20 Sup. Ct. 854, 44 L. Ed. 1055.

This brings us to the question whether the new pumping station,

with the connecting mains, within the meaning of the mortgages in suit, are after acquired property; and if so, what equities, if any, have intervened that prevent the enforcement of the equitable lien of the mortgages thereon.

The mortgages purport to grant, as security to the bonds, all the pipes laid in the streets of the city of Alton, including their extensions; the franchises and their extensions; the real estate on which the pumping station was located; and all pipes of every name, nature, or description, which were used, or which would be used, in operating the water company.

It is apparent from these provisions of the mortgage, and from the transactions already detailed in the issuing of bonds under the mortgage, that the mortgage transaction contemplated, not simply an existing water works system to remain as it then was, but a growing system, that would, from time to time, require new expenditures for extensions. And the bonds, for which provision in the mortgage was made were meant, not simply for the then present needs, but for such additional needs as would be occasioned by the future growth and extension of the city. The mortgage transaction, in short, was one that looked forward, as well as to the present; providing, primarily, for the financing of the future as well as of the present. What constitutes, in case of such a mortgage, "after acquired property," turns upon the question whether the particular property, said to be after acquired within the meaning of the mortgage, fairly and reasonably comes within the contemplated additions and extensions for which financial provision has been made. Wade v. Chicago, Springfield, etc., R. R. Co., 149 U. S. 327, 13 Sup. Ct. 892, 37 L. Ed. 755.

With this test in mind, the case before us is without difficulty. The Alton and New England Companies were under franchise agreement to furnish the people of Alton with water. Unquestionably this engagement required that the people of Alton should be furnished, so far as that was possible, with water not unhealthful. The old pumping station had ceased to meet that requirement. The removal up the river, therefore, to a point where healthful water could be obtained, was but the fulfillment of a franchise obligation.

The new station was erected on land purchased by an officer of the New England Company, and as such officer; and was equipped in its main essential, the Corliss engine, with property belonging to the New England Company, removed from the old station; and the evidence satisfies us that the provision for bonds under the then existing mortgages, honestly carried out, would have met the expenditures necessitated by such removal.

To these facts can be added another: The new pumping station, with its connecting mains, had no relation, substantially, to any new scheme of water distribution, or to the distribution of water over any territory not embraced in the New England Company's system. The sole function of the new station, with its connecting mains, was to supply the old company with the quality and quantity of water that, to fulfill its public undertaking, the old company was obliged somewhere to obtain. The old company remained the water company of the city, obliged, under its franchise, to distribute healthful water. The new

station was but a new mouth and throat to this old system. The organization of the Boston Company, and the creation in its name of the new pumping station with the connecting mains, was nothing less, and nothing more, than an attempt by Vennor, through corporate manipulation, to sever from this old water company, the mouth and throat through which, alone, that company could fulfill its franchise obligations.

Here, then, in a sentence, is the whole case: A mortgage on a necessarily expanding water works system—looking forward, as well as to the present, and contemplating that the new property, as fast as created, shall be drawn under the mortgage; a requirement that new property be created, constituting, in connection with the old property removed, the mouth and throat of the whole enterprise; and, finally, the actual creation of such new property, having no function other than to act as mouth and throat for the old. Can any one doubt, that under such circumstances the new property, whatever may be the legal form given to it, is equitably but after acquired property, within the meaning of the mortgage? Does not such a case, on its physical aspects alone, constitute a case of after acquired property?

Thus viewed, we need not concern ourselves with the question whether the new station was actually built out of bonds issued under the prior mortgages, or not. It is enough that the mortgage bond issue contemplated just such extensions. Nor need we concern ourselves with the question whether the bonds issued by the Boston Company to the International Company have been sold or not. The status of the new station as after acquired property does not, on facts such as are disclosed here, turn on the source from which the money was actually obtained. It is enough, that upon the physical facts visible to the whole world, and the provisions of the mortgage open to the whole world, there is made out a case that, within any fair interpretation of the mortgage transaction, necessarily includes the new pumping station and mains as an integral part of the water works system mortgaged, and therefore, equitably, a part of the property mortgaged.

The decree of the Circuit Court is affirmed.