O. W. SHIPMAN CO. v. DETROIT, LAKE SHORE & MT. CLEMENS RAILWAY.

Corporations—Insolvency—Assets—Sale—Trust Fund—Judgment Creditor's Bill.

> The president and principal stockholder of an insolvent corporation negotiated a sale of its assets, and submitted the plan to the stockholders, together with a list of indebtedness which he proposed to pay, amounting to more than the selling price. The sale was made and the proceeds, with other funds of the president, applied as agreed. *Held*, that creditors whose claims were not paid could not recover pro rata against the president on the theory that he was a trustee of all the creditors to the extent of the proceeds of the sale.

Appeal from Wayne; Rohnert, J. Submitted April 27, 1905. (Docket No. 7.) Decided June 29, 1905.

Judgment creditors' bill by the O. W. Shipman Company and others against the Detroit, Lake Shore & Mt. Clemens Railway, Merrill B. Mills, and others. From a decree dismissing the bill, complainants appeal. Affirmed.

*Bowen, Douglas, Whiting & Murfin*, for complainants.

*Maybury, Lucking, Emmons & Helfman*, for defendant Mills.

Ostrander, J. Complainants, in April, 1900, filed a judgment creditors' bill, in which, aside from formal averments, it is stated that prior to March 31, 1900, defendant Detroit, Lake Shore & Mt. Clemens Railway was operating a suburban street railway through the city of Detroit and various townships to the city of Mt. Clemens, and possessed of a large amount of personal property, and that defendant Mills was "principal stockholder of the same, and president of the corporation;" that on the day last

mentioned the said company, for a consideration of $400,-000, sold all of its property to defendant Detroit & Port Huron Shore Line Railway; that the bulk of the consideration aforesaid passed to defendant Mills, "who had been financing the said railway while it was in operation, * * * and who, as your orators are informed and believe, as part of the consideration for said sale, did, before said sale took place, agree with the defendant Detroit & Port Huron Shore Line Railway (but did not so agree with your orators, or any or either of them) to pay all the claims outstanding at that time against the Detroit, Lake Shore & Mt. Clemens Railway, among others being your orators' several claims; but your orators charge the fact to be that the said Mills has not paid any of the said claims, and your orators are unable by any process of law to collect the same from the Detroit, Lake Shore & Mt. Clemens Railway, nor have your orators thus far been able to collect the same from the defendant the Detroit & Port Huron Shore Line Railway, which corporation, your orators expressly charge, is liable, having received all the assets, tangible and otherwise, of the Detroit, Lake Shore & Mt. Clemens Railway, to the unsatisfied creditors of the Detroit, Lake Shore & Mt. Clemens Railway for the full amount of their claims;" that defendant Detroit & Port Huron Shore Line Railway has in its possession and under its control all of the assets of the selling company, refuses to pay the demands of complainants, and assigns as a reason for such refusal the said undertaking of defendant Mills; that defendant Mills refuses to pay complainants. The prayer for relief is the usual prayer of a judgment creditors' bill, and, further, that, if it is discovered that the buying company had transferred to it all of the assets of the selling company, it be decreed to pay complainants' demands; that if it appeared that the judgment debtor had no assets, and, further that defendant Mills had received the bulk of the consideration for the sale, and, having so received this large amount of property and money, has not paid any of the debts of the said corporation, and that

he undertook and agreed with the buying company to pay said debts, that he be decreed to pay complainants' said demands. Defendant Mills alone answered the bill of complaint. The cause as to this defendant having been brought on for hearing, a decree was made dismissing the bill.

The facts do not appear to be in dispute. The capital stock of the selling company was $300,000, of which defendant Mills held $125,000, and he was a director and president of the company. There were $350,000 of bonds secured by mortgage upon the assets of the company. These assets were worth not more than $341,000. The total indebtedness of the company to Mr. Mills, who had made large cash advances to the company, and to others, including the bonded debt, at the time of the sale of the road, was upwards of $450,000. It did not pay operating expenses, had been unsuccessful in securing certain terminals, and was in losing competition with another railway company. Mr. Mills negotiated a sale of property, excepting certain items of personalty, for $340,000, payable $50,000 cash, and $290,000 in bonds of the buying company. He submitted to the company the proposition to sell, and, as a part of it, a list of the debts of the company which he would pay and discharge. This included the debt which the company owed to himself, and debts to others, to pay which he was personally liable as surety for the company. The total was in excess of the selling price. At a meeting of stockholders at which every share of stock (3,000) was represented, 2,298 shares were voted in favor of accepting the proposal. The directors, with a single exception, ratified and sanctioned the action of the stockholders. Mr. Mills took the proceeds of the sale, and discharged not only the scheduled debts, but all the debts of the company, excepting about $16,000. Complainants are among those who were not paid. None of the stockholders received a penny. It is conceded that Mr. Mills actually paid, for the selling company, much more than $340,000 of its actual obligations, including all of those

designated by its stockholders to be paid. It is not claimed here that Mr. Mills ever agreed to pay the debts of the complainants. It was conceded at the hearing that no relief could be had against the buying company.

It is contended in this court that Mr. Mills should be held to be trustee of the proceeds of the sale for the benefit of all creditors of the judgment debtor. This contention is based upon the facts: (1) The insolvency of the selling company at the time sale was made; (2) the position occupied by Mr. Mills as officer of the company; (3) the actual receipt by Mr. Mills of the proceeds of the sale. The argument which is made proceeds upon the premise, also, that Mr. Mills made a sale to himself. That, plainly, he did not do. The company made the sale, and, as has been stated, it directed the disposition of the purchase price. The proceeds of the sale were not sufficient to pay all of the debts. Unless it was bound, under the circumstances, to apportion this sum to all of its creditors, the disposition which it did make cannot be questioned by these judgment creditors. Complainants claim that the company, or Mr. Mills for it, was bound to so apportion the proceeds of the sale. They rely also upon *Miner* v. *Ice Co.*, 93 Mich. 97 (17 L. R. A. 412). In that case, proceedings were instituted by a stockholder who asserted fraud, abuse of trust, and misappropriation of corporate funds, and whose complaint was held to sustain equitable jurisdiction to reform the abuses complained about, even to the extent of winding up, if necessary, the affairs of the corporation. The case at bar, however, requires, in our opinion, the application of the principles discussed and applied in *Bank of Montreal* v. *Lumber Co.*, 90 Mich. 345, and this view denies to complainants the relief they ask for.

The decree is affirmed, with costs to appellee.

Moore, C. J., and Grant, Blair, and Montgomery, JJ., concurred.