WEBSTER *v.* YPSILANTI CANNING CO.

1. CORPORATIONS —INSOLVENCY —MORTGAGES —PREFERENCE—DIS-
TRIBUTION OF ASSETS.
    Certain stockholders of a manufacturing corporation having
    lent it money and being about to indorse its notes at the
    bank to raise funds for a working capital, the board of direct-
    ors, all of whom were creditors, authorized the giving of a
    mortgage upon all the property of the corporation to secure
    the stockholder creditors and indorsers. The corporation
    was insolvent within the rule laid down in *Munson* v. *Ellis*,
    58 Mich. 331, but the annual report, subsequently made,
    showed assets of $11,400 and liabilities of $4,800. *Held*, that
    the mortgage was, not invalid as given in anticipation of dis-
    continuing the business or for the purpose of distributing the
    assets of a non-going concern to preferred creditors.

2. SAME — MORTGAGES — VALIDITY — PREFERENCE OF STOCKHOLD-
ERS.
    A mortgage on the assets of a corporation is not ineffective
    because ordered by directors who are personally secured
    thereby.

3. MORTGAGES—EXECUTION CREDITORS—PRIORITY OF LIEN.
    A corporation gave a mortgage covering its real and personal
    property to a trustee to secure certain creditors, and there-
    after an unsecured execution creditor levied on the real
    estate. Subsequently the trustee foreclosed the mortgage as
    to the real estate and bid it in for a sum sufficient to pay the
    entire debt, and later during the period of redemption fore-
    closed the mortgage as to the personal property, bid for it a
    sum sufficient to pay the entire debt, took the property and
    disposed of it. *Held*, that the execution creditor is entitled
    to a lien upon the real estate superior and prior to the title
    asserted by the trustee, and in default of payment of his
    debt, to the right to sell the real estate to satisfy the same.

Appeal from Washtenaw; Kinne, J.   Submitted June
14, 1907.   (Docket No. 17.)   Decided September 20, 1907.

Bill in aid of execution by Hiram P. Webster, George
W. Webster, Fred C. Cobb, Charles S. Cobb, and Miny

E. Miller, copartners as Webster, Cobb & Co., against the Ypsilanti Canning Company and Robert W. Hemphill, trustee. From the decree rendered, complainants appeal. Reversed.

*Choate & Webster* and *A. J. Sawyer & Son*, for complainants.

*Tracy L. Towner* and *John P. Kirk*, for defendants.

OSTRANDER, J. The complainant partnership is a judgment creditor which levied upon the real estate formerly owned by defendant corporation, which real estate was, subsequent to the making of the levy, sold in foreclosure proceedings to, and is now held by, defendant Hemphill, as trustee, for those whose obligations against the company were secured by the mortgage. The mortgage, which conveyed all property, real and personal, belonging to defendant corporation, was given by sole authority of the board of directors, each of whom was a creditor of the corporation and each, with some 37 other creditor stockholders, was secured by the mortgage. No other creditors were secured. It is claimed that the mortgage was given when the defendant was insolvent, was not a going concern, and had no intention of continuing business; was intended as and was in effect a distribution of all of the assets of the corporation to its stockholders.

It appears that a canning factory was built by a Chicago concern with money subscribed for that purpose by citizens of Ypsilanti and vicinity; after which the subscribers received stock in defendant corporation, which was organized to operate the factory, to the amount of their several subscriptions. The factory was built in 1901, and was turned over to the defendant corporation in February, 1902, having cost more than $11,000. There was no money for operating expenses; there were nearly 100 stockholders. Some of the stockholders lent the concern money, taking its notes. On June 9, 1902, $1,000

was borrowed at a bank and the note of the company, indorsed by the directors, given therefor. Prior to this transaction, and on June 6, 1902, the directors adopted the following resolution:

"*Whereas*, The Ypsilanti Canning Company is unable to procure money with which to carry on the business for the season 1902 except by individual indorsement of its paper by members of said company: *Resolved*, That the members of said company who so indorse or become liable upon the paper of said company shall have a lien in the nature of a first mortgage upon all the property and effects of the said Ypsilanti Canning Company, to save and indemnify them and each of them from all loss caused by such indorsement or liability."

From May to August, 1902, some $2,900 was raised among stockholders in addition to the $1,000 borrowed at the bank. The mortgage was executed November 21, 1902, and the condition was that the corporation pay—

"All notes given or indorsed or which shall be given or indorsed during the life of this mortgage which matures in three years from date hereof, by the said Ypsilanti Canning Company or by any one or all of its directors for and on behalf of said company, or for which said directors are jointly or individually liable, according to the terms and conditions of a certain bond bearing even date herewith executed by the said Ypsilanti Canning Company to the said party of the second part, to which this indenture is collateral security."

The bank note was paid before the mortgage was foreclosed. The mortgage was recorded February 24, 1903, and was foreclosed by advertisement in November, 1904, and the real estate bid in by the trustee for $2,327.84, which was the amount then secured thereby, with interest and costs. Complainants' debt is for lumber furnished defendant corporation in August, 1902. Judgment was rendered in justice's court March 24, 1903, and on July 8, 1903, transcript of the judgment was filed and judgment in the circuit court entered. The execution, calling for the collection of $231.15, was levied on the same day. It

is not shown that other than honest debts, representing money advanced by stockholders to afford capital for the business, were secured by the mortgage. The argument made by counsel for complainants supports the proposition that if the mortgage had been given before or at the time the advancements were made, it could not be successfully assailed.

Bad faith cannot be, upon this record, imputed to the secured creditors, or to the directors as officers, although the intention was to give a first lien upon the property to those who had advanced money to carry on the business. The corporation was insolvent, as insolvency is defined in *Munson* v. *Ellis*, 58 Mich. 331, when the mortgage was given; but the record does not support the claim that it was then hopelessly insolvent and it does not now appear that the property owned by it was not of sufficient value to pay the debts. Whether it had ceased to be a going concern and reasonable hope of continuing the business had been abandoned, is not, perhaps, so clear. The season of 1902 was wet and exceedingly bad for the canning business. Some business was done. With this exception, the company never operated the plant. They used up the funds raised by loans from stockholders and no new plan was formulated for securing needed capital. They leased and attempted to lease the factory, but there was no income therefrom. That they were, as one of the witnesses expressed it, "all hoping, though hoping against hope," is shown by various circumstances, among which is the date of the maturity of the mortgage. The annual report of the company, made February 28, 1903, and filed in March, 1903, shows the mortgage in question, gives the value of real estate as $2,500, value of personal estate, including credits, as $8,915.61, total indebtedness, $4,812.-17. Upon the whole record, we are convinced that the mortgage was not given in anticipation of discontinuing the business or for the purpose of distributing the assets of a non-going concern to preferred creditors. Unless the security was legally ineffective because ordered by direct-

ors who were personally secured thereby, it must be held that the case is, upon this point, ruled by the principle applied in *Bank of Montreal* v. *Lumber Co.*, 90 Mich. 345; *O. W. Shipman Co.* v. *Railway*, 140 Mich. 589; *Sanford Fork & Tool Co.* v. *Howe, Brown & Co.*, 157 U. S. 312.

As to the action of the directors. We find no authority, in those jurisdictions in which the rule of *Bank of Montreal* v. *Lumber Co.*, supra, is recognized, for the proposition that the mere fact that directors are preferred by action of the corporation instituted by themselves is sufficient to invalidate the security. The case of *Rickerson Roller-Mill Co.* v. *Machine Co.*, 75 Fed. 554, 23 C. C. A. 302, relied upon by counsel for complainants, is not like the case at bar. In that case, Judge Lurton, citing and commenting on the rule of *Bank of Montreal* v. *Lumber Co.*, says:

" If such a corporation may prefer a stranger who is a creditor, it may likewise prefer one of the corporators. In the latter case, however, the utmost good faith must appear, not only in respect of the bona fides of the debt paid or secured, but in regard to all the steps taken to secure the preference. In the case before us the preference is given to persons who at the time constituted three-fourths of the directors who assented to the arrangement."

After finding that the directors had given certain assurances to the attacking creditors, the learned judge, continuing, says:

" Under such circumstances, it is not enough for directors taking a preference out of the assets of an insolvent corporation to establish the fact of the debt due to themselves. They secured the opportunity to prefer themselves by assurances that they would not do so."

The reasoning employed applied to the facts of the case before us sustains the validity of the mortgage, and we are of opinion that it was a lawful security.

But the trustee, as mere matter of form, it is said, also foreclosed the chattel mortgage. Sale was made in Feb-

ruary, 1905. We do not know what property was covered by or sold under the chattel mortgage or the real value of it. There was some property. Manifestly, one purpose of foreclosing the chattel mortgage was to put title to the property in the trustee. He asserted title thereto. The inference drawn from the record is that this property is not now in the possession or under the control of the trustee. It, or the most of it, has disappeared. We have, then, this situation: A mortgagee whose mortgage covers real and personal property forecloses it, by advertisement, as to the real estate, and bids in the property for a sum sufficient to pay the entire debt. A judgment creditor of the mortgagor has, at the time, a lien upon the property subsequent to the mortgage lien. Later, during the period of redemption, having acquired no title to the real estate, the mortgagee forecloses his lien upon the personal property, bids for it a sum sufficient to pay the entire mortgage debt, takes possession and disposes of the property. Title to the real estate is asserted by virtue of the sheriff's deed. Thereafter, no other rights having intervened, the execution creditor, in aid of his execution and lien, seeks a decree postponing the mortgagee's title to his lien. The court below held the foreclosure of the chattel mortgage unlawful and the apparent title acquired thereby to be void, and gave no other relief.

It is clear that if the mortgagor had paid the debt or if the amount bid at the chattel-mortgage sale had been paid in cash, the execution levy would have remained a first lien on the real estate. In the absence of some controlling equity in favor of defendants, we think that as to complainants the case is not different in law from what it would be if the sale of the personal property had been for cash. Indeed, equitable considerations favor complainants, since the personal property out of which, presumably, they might have made their debt, has been dispersed by the trustee. We are of opinion that the execution creditor should be held to have a lien upon the real estate superior and prior to the title asserted by defendant Hemp-

hill, trustee, and, in default of payment of the debt, the right to sell the real estate to satisfy the same. See *James* v. *Brown*, 11 Mich. 25.

The decree below is reversed, and a decree will be entered here in accord with the views herein expressed.

Complainants will recover costs of both courts.

CARPENTER, GRANT, and MONTGOMERY, JJ., concurred with OSTRANDER, J. BLAIR, J., concurred in the result.