KAISER v. DETROIT & NORTHWESTERN RAILWAY CO.

1. CORPORATIONS—CONSOLIDATION—SALE.

It did not effect a corporate consolidation to transfer all the property of an insolvent corporation to a going company by vote of a sufficient proportion of the stock, on the sole condition that the transferee assume the bonded indebtedness of the insolvent, which covenanted that the property should be clear of all other incumbrances, debts and claims, and agreed to transfer a majority of its stock to a party to be named by the purchaser; no showing being made that the consideration was inadequate or that the stockholders of the transferring corporation obtained any stock in the purchasing company.

2. SAME—LIEN OF CREDITOR—STATUTES.

No lien upon the property of the insolvent company attached in favor of a creditor who obtained judgment for personal injuries two years after the transfer. Act No. 110, Pub. Acts 1899.

Appeal from Wayne; Mandell, J. Submitted October 9, 1911. (Docket No. 11.) Decided March 29, 1912.

Bill by Herman Kaiser against the Detroit & Northwestern Railway Company and others for the enforcement of a creditor's lien on property of the defendants. From a decree dismissing the bill, complainant appeals. Affirmed.

*Washington I. Robinson* and *N. Calvin Bigelow,* for complainant.

*Brennan, Donnelly & Van De Mark,* for defendant Detroit United Railway.

*Thomas A. E. Weadock,* for defendants, Detroit & Northwestern Railway Company and E. W. Voigt.

MOORE, C. J. December 23, 1899, complainant sustained an injury, for which he began suit against the defend-

ant Detroit & Northwestern Railway Company, March 30, 1900. The plaintiff obtained a verdict for $3,000, upon which judgment was rendered July 8, 1903, and affirmed in this court May 17, 1904. 136 Mich. 541 (99 N. W. 743). Execution was returned unsatisfied, and this bill was filed to invoke a lien which Act 110 of 1899 undertakes to give after judgment. The defendants answered, denying any liability. After a hearing, the bill of complaint was dismissed. The case is brought here by appeal.

The claim of complainant is stated by counsel as follows:

"It is the contention of the complainant herein that the transfer of the properties of the said Detroit & Northwestern Road to the Detroit United Railway was and is void as against the complainant; that, among other claims, the transfer, while called by the companies participating therein a 'sale,' amounted in law to a 'consolidation;' that it is in fact a consolidation of the Detroit & Northwestern Railway Company with the Detroit United Railway Company; and that therefore the property taken over by the said Detroit United Railway should be subjected to the payment of the debts of the Detroit & Northwestern Railway and therefore to your complainant's claim and judgment. Also the complainant claims that the manner in which the transfer was consummated was, as is shown by the proofs, void as against the complainant. * * * The only consideration, it would appear from the evidence in the case, for the transfer, was the guaranteeing by the Detroit United Railway of the payment of the outstanding bonds of the Detroit & Northwestern Railway Company. The inference may fairly be drawn that these bonds were owned, if not wholly at least in large part, by stockholders of the Detroit & Northwestern Railway Company. We would further call the attention of the court to the fact that after the meeting of the stockholders and directors of the Detroit & Northwestern Railway Company, at which the transfer of the property of the Detroit & Northwestern Railway Company to the Detroit United Railway was consummated, there was never any other meeting of stockholders of the Detroit & Northwestern Railway Company nor any act done by the Detroit & Northwestern Railway Company as a corporation, and that the same practically went out of existence. It

was admitted that, at the time of the alleged transfer, the Detroit & Northwestern Railway was financially embarrassed."

On the part of defendants it is claimed that the Detroit & Northwestern Railway Company was hopelessly insolvent; that, realizing the situation, it sold its property to the Detroit United Railway Company for all it was worth; that no consolidation was effected; but that a good-faith purchase was made.

It is claimed in the answer that the defendant Voigt, who was a large stockholder in the Detroit & Northwestern Railway Company, advanced large sums of money to said company.

"This defendant further avers that on the 1st day of June, 1904, by the judgment of the circuit court for the county of Wayne, said E. W. Voigt, defendant herein, recovered a judgment against said Detroit & Northwestern Railway Company in the sum of $221,249.67, which judgment is still in full force and effect, not reversed, annulled, set aside, or appealed from."

Some phases of litigation arising out of this transaction have been before this court in the case of *Randall* v. *Union Trust Co.*, 156 Mich. 216 (120 N. W. 594).

The notice to the stockholders of the meeting at which the sale was agreed upon stated that the company was wholly insolvent, and "if this sale cannot be effected a receiver will be appointed at once and the mortgage foreclosed. The result of a foreclosure will be to wipe out entirely the unsecured debts." Four thousand nine hundred and nineteen of the 5,000 shares of stock were represented at this meeting which authorized a sale. The material parts of the agreement made are as follows:

"The Detroit & Northwestern Railway hereby offers and agrees to sell its railway, and all its property and assets of every name and nature as of date of May 1, 1901, to the Detroit United Railway, for the sum of eight hundred and fifty-five gold bonds of the par value of one thousand dollars each, bearing four and one-half per cent. interest per annum, payable semi-annually. Said bonds

are to be part of an authorized issue of one million dollars of bonds bearing date May 1, 1901, to run twenty years, with rights of makers and its assigns to redeem part or the whole thereof at any time after ten years on paying five per cent. premium. * * * The remaining one hundred and forty-five thousand of said authorized issue of bonds are to be executed and deposited with the trustee in the mortgage hereafter referred to, and by it to be delivered to the treasurer of the Detroit United Railway, whenever requested by it, for sale, the proceeds thereof to be used for improvement and extension of the railway sold, and for no other purpose. The payment of all these bonds and interest is to be secured by a first mortgage on all the property sold, with usual and appropriate provisions to be approved by said Detroit United Railway.

"The Detroit & Northwestern Railway hereby covenants:

"(1) That it has and will sell and deliver to the purchaser subsisting rights of way and municipal grants of right of occupation in streets and highways, for the entire length of its route, and for all tracks now laid and operated by it, and that the same are not liable to forfeiture or reversion because of any act or omission on its part, prior to May 1, 1901. Abstracts of title to all real estate and copies of all grants in the streets and highways and grants of easements and rights of way shall be furnished forthwith to purchaser.

"(2) That the property shall be free and clear from all liens and adverse rights or titles and incumbrances, and that all debts, dues, demands and claims of every name and nature against said Detroit & Northwestern Railway, or its property and assets, which accrued prior to May 1, 1901, shall be fully satisfied and discharged before delivery of the purchase price. This includes amongst all others, all claims for unliquidated damages arising out of negligent injury and other causes. This also includes immediate retirement and cancellation of all existing outstanding and authorized bonds, whether actually issued or not, and the discharge and cancellation of any and all mortgage on said property.

"(3) That the proposed sale shall be consented to by not less than $489,300.00 of the capital stock of said Detroit & Northwestern Railway, and not less than $489,300.00 of the capital stock shall be transferred to such person or

persons as said Detroit United Railway may direct. The purchaser shall also be indemnified by E. W. Voigt against any and all claims that may be made by or on behalf of any stockholder not consenting to such sale, on account of said sale, or any matter connected therewith, or arising therefrom, or any claim for the value of said non-consenting stock. Said indemnity shall be included in a certain trust mortgage to be made by said Voigt to the Union Trust Company, to secure advances to him to pay floating and unsecured indebtedness of said Detroit & Northwestern Railway. * * *

"The Union Trust Company, Detroit, The Preston National Bank, Detroit, and W. J. Haynes & Sons, of Cleveland, all being creditors and holders of now outstanding bonds of said Detroit & Northwestern Railway, shall cotemporaneously with the execution and delivery of this agreement, execute and deliver to the purchaser a joint and several guarantee of the peformance of covenant number two hereinbefore set forth. The said guarantee to be as follows: Whereas, the Detroit &· Northwestern Railway has this day agreed to sell, and the Detroit United Railway has agreed to buy, all of the railway property and assets of said Detroit & Northwestern Railway, upon the terms, covenants and conditions set forth in the agreement to which this is attached and made a part; and whereas, said Detroit & Northwestern Railway is financially embarrassed and unable to pay its debts or the interest thereon and is insolvent, and the undersigned are creditors and bondholders thereof: Now, therefore, in consideration of the premises and of one dollar to us in hand paid by the Detroit United Railway, and other good and valuable considerations, we, the undersigned, do hereby guarantee the faithful performance by said Detroit & Northwestern Railway of the covenant number two (2) in said agreement, that is to say: That the property when sold and delivered to said Detroit United Railway shall be free from all liens, adverse rights, titles and encumbrances, and that all debts due and demands and claims of every name and nature against said Detroit & Northwestern Railway, on its property for which it was liable May 1, 1901, shall be fully paid, satisfied and discharged before the delivery of the purchase price, and to save the Detroit United Railway and such vendee as it may designate harmless on account thereof. This includes all claims for negligence or other injury, also the retire-

ment and cancellation of all existing outstanding or authorized bonds, whether actually issued or not, and the discharge and cancellation of any mortgage on the property or any part thereof.

"(6) The property shall be conveyed and delivered on the said terms aforesaid on or before June 1, 1901. Inasmuch as the property is to be taken over as of May 1, 1901, it is agreed: That immediately upon the execution of this agreement, the Detroit & Northwestern Railway shall put, and continue thenceforward, the operation of said line in the full and absolute control, management and operation of such person or persons as the Detroit United Railway shall designate, with power to receive and control all earnings and moneys accruing or otherwise coming to said Detroit & Northwestern Railway. The Detroit United Railway hereby agrees to acquire and take over the property hereinbefore described and referred to, on the terms aforesaid."

The guaranties referred to were executed and the property turned over to the Detroit United Railway Company. It is not shown that the $855,000 of bonds guaranteed were not the full value of the property. It is not shown that the stockholders of the Detroit & Northwestern Railway ever received anything for their stock, either cash or stock of the Detroit United Railway.

It is contended by counsel for complainant that the case is within *Grenell* v. *Detroit Gas Co.*, 112 Mich. 70 (70 N. W. 413), *Shadford* v. *Railway*, 130 Mich. 300 (89 N. W. 960), and *Green* v. *Railways Co.*, 159 Mich. 58 (123 N. W. 607). A reference to those cases will show they are easily distinguishable. The instant case is more like *Chase* v. *Telephone Co.*, 121 Mich. 631 (80 N. W. 717), and *O. W. Shipman Co.* v. *Railway*, 140 Mich. 589 (104 N. W. 24). It will be noticed the sale of the road was made more than two years before complainant obtained his judgment. It is not until the judgment is obtained that the statutory lien attaches.

The decree is affirmed, with costs.

McALVAY, BLAIR, OSTRANDER, and BIRD, JJ., concurred.