## MEDFORD et al. v. MYRICK et al.

(Court of Civil Appeals of Texas. Texarkana. April 25, 1912. On Motion for Rehearing, May 30, 1912.)

1. CORPORATIONS (§ 415*) — DIRECTORS — PLEDGE OF BONDS—VALIDITY.

The action of directors in pledging bonds of their corporation as security for its note upon which they were sureties as individuals was not void, being presumptively for the benefit of the holder of the note, and any benefit accruing to them as sureties being merely incidental.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669; Dec. Dig. § 415.*]

2. CORPORATIONS (§ 425*)—PLEDGE OF BONDS. —SALE—ATTACK.

Where the bonds of a corporation were pledged as security for the corporation's note and later were purchased from the creditor by the directors of the corporation at their full face value for cash, and no objection was made to the transaction for 10 years, the purchasers of the property of the corporation under a conveyance recognizing the validity and priority of this security could not assail the transaction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1697–1701, 1705; Dec. Dig. § 425.*]

3. CORPORATIONS (§ 316*)—BONDS—PURCHASE BY DIRECTORS.

The directors of a corporation may purchase its bonds or take them as security for personally indorsing corporate paper, provided the transaction is free from any taint of fraud or unfairness.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401, 1402, 1404, 1406, 1408, 1409, 1412–1414; Dec. Dig. § 316.*]

4. APPEAL AND ERROR (§ 1073*)—HARMLESS ERROR—JUDGMENT.

Where, in the action of bondholders to foreclose their lien, the evidence showed plaintiffs to be entitled to a foreclosure by virtue of a trust deed, a judgment, ordering foreclosure not only of the trust deed but also of a vendor's lien in their favor for the same indebtedness, if error, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. § 1073.*]

**5. CORPORATIONS (§ 478*) — TRUST DEED — CONSTRUCTION—AFTER-ACQUIRED PROPERTY.**

A trust deed given by a corporation, and reciting that it included the property already owned by the corporation, and that which might thereafter be acquired, covered property for which the corporation was then negotiating and which it afterwards acquired for use in its corporate business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1871; Dec. Dig. § 478.*]

On Motion for Rehearing.

**6. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS OF ERROR—WAIVER OF OBJECTIONS.**

An objection to the judgment, not presented by an assignment of error, is waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982; Dec. Dig. § 719.*]

**7. CORPORATIONS (§ 415*) — POWERS OF DIRECTORS—WAIVER OF FORECLOSURE.**

Where the bonds of a corporation had been pledged as security for a loan, the directors could waive foreclosure of the pledge, and thereby validate a sale of the bonds by the creditor to purchasers having no fiduciary relation to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669; Dec. Dig. § 415.*]

**8. CORPORATIONS (§ 482*) — MORTGAGES — FORECLOSURE—JUDGMENT.**

Where a corporation's bonds are held in part by its directors as individuals and in part by parties not interested in the corporation, and all are joined in an action to foreclose the lien which secures the payment of the bonds, the court should grant proper relief on the bonds held by the parties not interested in the corporation, though the lien claimed by the directors cannot be enforced.

[Ed. Note.—For other cases, see Corporations. Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

**9. APPEAL AND ERROR (§ 1073*)—REVIEW—HARMLESS ERROR—JUDGMENT.**

A judgment, foreclosing a deed of trust on corporate property at the suit of the holders of the bonds secured thereby, should not be reversed because some of the plaintiffs were not lawful holders of the bonds in their hands, where the property was not worth enough to discharge the lien of those plaintiffs to whose ownership no objection was raised.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. § 1073.*]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by D. N. Myrick and others against R. E. Medford and another. From a judgment for plaintiffs, the defendants appeal. Affirmed.

Richard B. Semple, Thos. P. Steger, and J. W. Gross, all of Bonham, for appellants. J. G. McGrady, of Ft. Worth, and Cunningham & McMahon, of Bonham, for appellees.

HODGES, J. This is an action by the appellees, as the holders of certain bonds previously issued by the City Electric Light & Waterworks Company of Ladonia, a private corporation, to foreclose a lien given upon certain property to secure their payment.

The appellants, R. E. Medford and the Ladonia Light & Waterworks Company, defendants below, are the present claimants of the property upon which the lien existed, and acquired title subsequent to the creation of the deed of trust and subject to that incumbrance. The evidence establishes the following facts: About 1897 the City Electric Light & Waterworks Company of Ladonia was incorporated under the general laws of Texas, with an authorized capital stock of $20,000, for the purpose of furnishing water and lights to the inhabitants of the town of Ladonia. On the 1st day of May, 1899, the directors of that company caused to be issued 24 bonds in sums of $500 each, payable to bearer, drawing interest at the rate of 6 per cent. per annum payable semiannually; the principal sum to mature in 20 years. It was also stipulated in the face of the bonds that, if any installment of interest was not paid at maturity, the holder of the bonds should have the option of declaring the principal due and of enforcing collection of the entire sum. For the purpose of securing the payment of those bonds, the directors at the same time caused to be executed a deed of trust, naming the Union Trust Company of St. Louis as the trustee, which covered all of its property and franchises then owned and that might be subsequently acquired. D. E. Waggoner, one of the directors, was authorized by the board to negotiate the sale of those bonds in the eastern markets. He visited St. Louis and other points for that purpose, but was unsuccessful. The company being in urgent need of money to meet its obligations then existing, and to procure funds for future operation, the directors finally determined to borrow $12,000 upon the note of the corporation from a St. Louis bank. The loan was obtained upon the execution of the note of the company with six of the directors and three other citizens of Ladonia as sureties thereon. The bonds of the company theretofore issued were also pledged to the bank as collateral security. This note matured in one year from its date, August 5, 1900. After maturity it was transferred to the First National Bank of Ladonia, together with the collateral security pledged for its payment. In order to raise funds for its payment, the bonds held by the First National Bank of Ladonia were purchased by the following named parties: J. F. McFarland, J. E. Jackson, D. N. Myrick, D. E. Waggoner, A. B. Cox, S. C. Relyea, W. G. Nunn, G. W. Blakeney, C. W. T. Weldon, and the First National Bank. The first five of the above-named purchasers were members of the board of directors, and composed a majority of that body. Two of the bonds were canceled, leaving 22 outstanding. The interest on those 22 bonds seems to have been paid as it fell due, till some time prior to the filing of this suit.

In February, 1905, the Ladonia National Bank obtained a judgment against the City Electric Light & Waterworks Company for the sum of $1,227.07, upon which an execution was issued and all the property of the company, including that here in controversy, was levied upon and sold. J. F. McFarland and W. E. Waggoner became the purchasers at the execution sale. In February, 1906, McFarland and Waggoner conveyed the property purchased by them to one W. J. Pierson by an instrument containing, among others, the following provisions: "It being the intent hereof to convey each and every franchise, right, title, interest and property used in connection with the waterworks business of Ladonia, Texas, or the electric light business at Ladonia, Texas, with all standpipes, lakes, pools and supplies of water, together with the lands upon which same are located, and all electric lines, poles, wires, generators, engines and boilers, pumping appliances and machinery, water mains and hydrants, whether above or below ground or on hand unlaid; the said property being intended to be conveyed as a going plant, and including any and all good will for the conduct, running and management of the same. Said conveyance, however, is made and intended to be made subject to a mortgage or trust deed dated May 1, 1899, from the City Electric Light & Waterworks Company, by J. F. McFarland, president, to the Union Trust Company of St. Louis, Missouri, trustee, securing twenty-four bonds aggregating twelve thousand dollars, being for the sum of five hundred dollars each; and the said conveyance is made further subject to the taxes on said property for the year 1906, it being understood that the grantee herein will pay the taxes on the property conveyed for the year 1906." The consideration mentioned was other property conveyed by the purchaser to the sellers. McFarland testified that the consideration for the sale to Pierson was some other property owned by the latter upon which there was an incumbrance which he and Waggoner assumed, and that Pierson agreed to assume and pay off the bonded indebtedness of the City Electric Light & Waterworks Company. Waggoner testified to the same effect. This testimony was not controverted, although admitted over the objection of the appellants upon the ground that it tended to vary the terms of the written contract. Pierson afterwards organized the Ladonia Light & Waterworks Company, of which he was practically the sole owner, and in March, 1906, conveyed all of the property purchased by him at the above-mentioned execution sale to that company; the consideration recited being $1 in cash paid and the execution and delivery to Pierson of a note for $20,000 due in one year. The management and control of the property passed through several hands, and was finally acquired by R. E. Medford, who claimed it at the time of the institution of this suit in 1910. The interest on the bonds had been paid at maturity by Pierson for some time after his purchase, and also by some of the subsequent owners. It appears that in 1906 the charter of the City Electric Light & Waterworks Company, which had issued the bonds referred to, was forfeited for a failure to pay its annual franchise tax, and that it thereafter ceased to exercise any of its corporate functions. In January, 1911, D. N. Myrick, the First National Bank of Ladonia, A. B. Cox, W. G. Nunn, W. E. Weldon, C. H. Weldon, Geo. W. Blakeney, J. E. Jackson, the First National Bank of Grand Prairie, and J. F. McFarland filed their amended original petition alleging default of the payment of the interest which had accrued upon the bonds, and the mismanagement of the property by Medford, the claimant at that time, and asked for the appointment of a receiver and for the foreclosure of their mortgage lien secured by the trust deed originally executed by the City Electric Light & Waterworks Company, May 1, 1899. From a judgment rendered in favor of the appellees, plaintiffs below, Medford and the Ladonia Light & Waterworks Company prosecute this appeal.

[1] The principal defense urged in this court is based upon the contention that the transaction by which the original owners of the bonds, some of whom are the present appellees, acquired their possession and ownership of those instruments, was illegal and void. The argument is made that the directors who authorized that transaction, being the agents and representatives of the City Electric Light & Waterworks Company, could not by any act of theirs pass to themselves a good and valid title to the bonds, or obtain the benefit of the lien by which the bonds were secured. In support of that contention we are referred to several authorities, some of which are clearly not applicable. The case of Scott v. Farmers' & Merchants' National Bank, 97 Tex. 31, 75 S. W. 7, 104 Am. St. Rep. 835, seems to be chiefly relied on as supporting the proposition here urged. In that case bonds had been issued by the corporation, but had never been sold or negotiated for any purpose. The directors thereafter became sureties on the obligation of the corporation, and for their own protection directed the secretary to retain the bonds in his possession. They thereafter undertook to assert a lien based upon that order. The court held that this could not be done, and gave as a reason that the bonds had never been sold. The facts of that case are clearly distinguishable from those here under consideration. In this case the directors of the City Electric Light & Waterworks Company had actually pledged the bonds to the St. Louis bank as collateral security for the payment of the note of the corporation on which they were sureties. This they had the right to do. The debt thus secured was not theirs primarily, but

that of the corporation. The placing of the bonds as collateral security was presumptively for the benefit of the holder of the note. Whatever protection or benefit the directors may have received by reason of that security was merely incidental, one which would result from an equitable subrogation in the event they had paid the note upon default of their principal. Hence, in authorizing the pledging of the bonds secured by the trust deed, the conduct of the directors, however much it might be a proper subject of judicial scrutiny for evidences of fraud or unfairness, was not absolutely void.

[2] The next question is: Could the directors acting individually and separately, as seems to have been done, purchase the bonds of their corporation while these were in the hands of the First National Bank of Ladonia held as security for the payment of that note, and before the satisfaction of that indebtedness? It must be borne in mind that the attack here made is not by any stockholder of the corporation, or any creditor claiming a prior or an equal right to share in the assets of the corporation, but is by those who have purchased the property of the corporation and hold it under a conveyance expressly recognizing the validity and priority of the security now claimed by the appellees. Therefore, unless the transaction assailed is so far illegal as to be an absolute nullity, it is not subject to the objection made.

[3] That directors of a corporation may purchase its bonds, or take them as security for their personal indorsement of the corporate paper, is now well settled by authority. College Park, etc., Co. v. Hall, 15 Tex. Civ. App. 273, 40 S. W. 64; Webster v. Ypsilanti Canning Co., 149 Mich. 489, 113 N. W. 7; Sanford Fork Tool Co. v. Howe, 157 U. S. 313, 15 Sup. Ct. 621, 39 L. Ed. 713; 2 Cook on Corporations, §§ 692, 693; 3 Thompson on Corporations, §§ 4068–4070; 1 Beach on Private Corporations, § 245. It is true that the conduct of directors involved in such transactions as this must be free from any taint of fraud or unfairness. But conceding that the law is still more exacting and makes such transactions voidable at the mere option of the stockholders, it does not follow that parties occupying the situation of the appellants in this litigation could invoke the aid of such a veto power. The bonds were acquired by the appellees approximately 10 years before the institution of this suit. The evidence shows that they were taken at their face value and were paid for in cash, and that this was done after an unsuccessful effort to sell them to other parties; and further that the primary purpose was to secure funds to enable the corporation to continue the performance of its corporate duties and discharge its past obligations. After a struggle of six years thereafter, the charter of this company was forfeited, and it ceased to do business. During that time the interest on those bonds appears to have been paid. Not a word of protest or objection is heard, so far as the evidence discloses, from any stockholder or creditor, which would tend to impeach the fairness of the purchase or to indicate a disposition to repudiate the transaction by which the bonds were acquired. If the original acquisition of the bonds and the lien created by the trust deed are held valid, then it follows that the right to the judgment of foreclosure upon the property incumbered was a necessary incident.

[4] It is true that the court in his judgment orders a foreclosure not only of the deed of trust, but what he terms a "vendor's lien." Conceding that the foreclosure of a "vendor's lien" based upon the assumption that Pierson had agreed to pay the mortgage indebtedness was unauthorized, the error would be harmless if a judgment foreclosing the trust deed was authorized by the facts.

[5] Appellants also insist that the court erred in extending the judgment of foreclosure to include 1½ acres of land acquired by the City Electric Light & Waterworks Company after the execution of the deed of trust in 1899. The testimony shows that, at the time the deed of trust was executed, the directors had been negotiating for the purchase of that particular lot of land, for the purpose of using it as a site for a pool, or water reservoir, needed in the conduct of the corporate business. The purchase had not then been completed because the parties could not agree upon the price. It was shortly thereafter purchased, however, and was a part of the property sold under the execution and purchased by Pierson, and referred to in that provision of the conveyance to him from McFarland and Waggoner and which was taken subject to the incumbrance previously existing. The terms of the trust deed included property already owned by the corporation, and that which might thereafter be acquired. We think there was no error in foreclosing the lien upon this particular lot of land along with the remainder of the corporate property. New England Waterworks Co. v. Farmers' Loan & Trust Co., 136 Fed. 521, 69 C. C. A. 297; Wade v. Chicago, etc., R. R. Co., 149 U. S. 327, 13 Sup. Ct. 892, 37 L. Ed. 755; Central Trust Co. v. Kneeland, 138 U. S. 414, 11 Sup. Ct. 357, 34 L. Ed. 1014; 27 Cyc. 1141, and authorities cited; 1 Jones on Mortgages, § 153.

The objection urged by appellants that, in order for after-acquired property to be included in a mortgage, there must be some specific description sufficient to identify the property, is not supported by the authorities above referred to. In the first case cited the court says: "What constitutes, in case of such a mortgage, 'after-acquired property,' turns upon the question whether the particular property said to be after acquired within the meaning of the mortgage fairly and rea-

sonably comes within the contemplated additions and extensions for which financial provision has been made." Applying that rule to the facts disclosed by the evidence in this case, the 1½-acre lot, which was designed and used for the storage of water necessary for carrying on the corporate enterprise, falls within the class of property referred to in the above extract. In the section referred to in Jones on Mortgages the author says: "Equity considers as done that which the mortgagor has distinctly agreed to do and is in consequence bound to do. Upon every acquisition of property within the description contained in the mortgage a decree might be obtained that the mortgagor could execute a mortgage of such property; but, instead of actually following out this troublesome process, equity treats the mortgage as simply attaching to the newly acquired property as it comes into the mortgagor's possession, or, in other words, considers that of every article of property as acquired there was an actual mortgage then executed in fulfillment of the mortgage contract."

If the conclusions reached are correct, the questions presented in the remaining assignments of error become immaterial.

The judgment of the district court is affirmed.

### On Motion for Rehearing.

[6] The appellants insist that we overlooked the fact that the judgment rendered in the court below foreclosed the lien on a third tract of land not owned by the City Electric Light & Waterworks Company at the time the mortgage given to secure the bonds was executed. In the original opinion disposing of this feature of the controversy, we noticed only the objection directed against the action of the court in foreclosing the lien upon what is known as the "Hobbs lot," consisting of 1½ acres. The only assignment of error in which any objection to the foreclosure of the lien upon after-acquired property is made consists of the following: "The court erred in permitting plaintiffs' counsel to read to the jury a deed executed by W. H. McCowan to said City Electric Light & Waterworks Company, dated September 29, 1899, conveying to said company 1½ acres of the Hobbs survey, when defendants' counsel objected to said evidence because said land is not embraced in said trust deed and was purchased after the date of the same," etc. It will be observed that no reference is here made to what is now designated as the "Myrick lot" and which it is claimed was overlooked. The authority of the court to foreclose on the Myrick lot was not discussed, because the question was not called to our attention in any assignment of error. Under the record as presented, we consider any further objection besides that mentioned as having been waived.

[7, 8] Appellants again urge their objection to the validity of the transfer by which the bonds were acquired by the members of the board of directors of the old corporation. An investigation of the record shows that 12 out of the 22 bonds disposed of by that transaction were taken by parties who were not members of this board of directors. Therefore, whatever may be said regarding the right of the directors themselves to in that manner acquire ownership of the bonds, no such objection can be urged against the transaction in so far as it affected the bonds acquired by parties who were not directors. There was no fiduciary relation existing between those parties and the company which could be invoked for setting aside the sale to them. As to these the directors might consent to waive a foreclosure by the creditor bank, and permit such purchasers to take a valid title secured by the lien. These purchasers were parties to this suit, being joined with those directors who were holders of the bonds, and were entitled to have their liens foreclosed in this action. Hence if as creditors and lienholders they had enforceable rights, it was the duty of the court, upon a trial below, to grant the proper relief, even though in the same action liens were claimed by the directors which could not be enforced.

[9] The judgment is attacked as an entirety, no effort being made to separate the rights of these different creditors, or distinguish between the rights of the creditors who were not directors and those who were. The testimony shows that the property in controversy was not worth more than $6,000 or $7,000. This would be sufficient to cover little, if any, more than the principal and interest due upon the $6,000 of bonds held by creditors who were not directors, and the costs of suit. It follows that, even if we should accept the appellants' view of the law as applicable to the dealings of the directors themselves with the corporation, the judgment should not be disturbed.

The motion is overruled.